Yevgen FROMER, Appellee,

v.

Charles J. SCULLY, Harold J. Smith, Walter Kelly, Everett W. Jones, Thomas J. Coughlin, and Hirshel Jaffee, Appellants.

No. 1014, Docket 86–2463.

United States Court of Appeals, Second Circuit.

Argued April 1, 1987.

Decided April 24, 1987.

Eugene A. Gaer, New York City (Joel W. Sternman, Neil A. Miller, and Rosenman & Colin, New York City, on the brief), for appellee.

Martha O. Shoemaker, Asst. Atty. Gen. of the State of N.Y. (Robert Abrams, Atty.

Gen., and Lawrence S. Kahn, Deputy Sol. Gen., and Jeffrey J. Slonim, Douglas D. Aronin, and Harvey M. Berman, Asst. Attys. Gen., on the brief), for appellants.

Before FEINBERG, Chief Judge and TIMBERS and ALTIMARI, Circuit Judges.

TIMBERS, Circuit Judge:

Appellants Charles J. Scully and others (collectively "appellants") appeal from a judgment entered January 29, 1987 in the Southern District of New York, Charles E. Stewart, Jr., *District Judge, Fromer v. Scully,* 649 F.Supp. 512, which granted appellee Yevgen Fromer ("appellee") declaratory and injunctive relief after a bench trial on his claim under 42 U.S.C. § 1983 (1982).

Appellee is an inmate in the custody of the New York Department of Correctional Services ("the Department"). In his amended complaint in the instant § 1983 action, appellee challenged among other things the constitutionality as applied to him of a Department Directive ("the Directive") which requires inmates to shave or trim their beards to a length of no more than one inch. Appellee claimed that his religious beliefs as an Orthodox Jew prohibit him from shaving, trimming, or cutting his facial hair and therefore that application of the Directive to him violated his right to free exercise of religion under the First and Fourteenth Amendments to the United States Constitution.

The district court, after finding that appellee held a sincere religious belief, declared the Directive unconstitutional as applied to appellee and permanently enjoined appellants from enforcing it against him or punishing him for his noncompliance.

On appeal, appellants claim, first, that the district court applied the wrong standard in evaluating the constitutionality of the Directive; and, second, that the Directive is constitutional even when evaluated under the standard applied by the district court. Appellants do not challenge the district court's finding that appellee's religious belief regarding his beard was sincere.

We hold, first, that the district court applied the correct standard; and, second, that the court did not err in its application of that standard.

We affirm, and we do so substantially for the reasons set forth in Judge Stewart's excellent opinion.

I.

Judge Stewart's opinion contains a comprehensive recital of the facts. *Fromer, supra,* 649 F. Supp. at 513–17. We assume familiarity with that opinion. We summarize here certain facts which warrant emphasis and those additional facts believed necessary to an understanding of the issues raised on appeal.

Appellee grew up in a small Orthodox Jewish community in the Ukraine, Soviet Union. In 1975, after moving to Brooklyn, New York, he became involved in the Lubavitch Hasidic movement. He lived and studied at a Lubavitch yeshiva until late 1977. In 1980, his observance of Jewish laws began to deteriorate. In June 1982, he was arrested on a charge of selling cocaine. He has been in the custody of the Department since his conviction on the narcotics charge in March 1983. Soon after his incarceration began, he became convinced that his criminal activity was attributable to his failure to observe Jewish laws.

While incarcerated at the Attica Correctional Facility, appellee commenced the instant action *pro se* on August 8, 1984. His present counsel was appointed in November 1984. After his transfer to the Great Meadow Correctional Facility in January, 1985, he was disciplined twice for disobeying orders to trim his beard.

Appellee filed an amended complaint in the instant action on February 3, 1985. The amended complaint names as defendants appellant Thomas J. Coughlin, who is the commissioner of the Department, and appellant Hirshel Jaffee, who is a Jewish Chaplain at one of the prisons at which appellee has been incarcerated. Each of the other defendants—appellants in this

Court—is a Superintendent of a prison at which appellee has been or is incarcerated.

The amended complaint contains nine claims, each alleging that appellants denied appellee certain constitutional rights in violation of § 1983. The Ninth Claim—the only one relevant to the instant appeal—alleges that the Directive is unconstitutional as applied to appellee to the extent that it prohibits inmates from growing facial hair in excess of one inch.

On April 8, 1985, appellants filed a motion pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) to dismiss the amended complaint.

In May 1985, the Department transferred appellee from the Great Meadow Correctional Facility to the Wallkill Correctional Facility. On his arrival at Wallkill, he was told that he would have to trim his beard. When he refused, he was sentenced administratively to 30 days solitary confinement at the Downstate Correctional Facility—a maximum security prison. Appellee moved by order to show cause for a preliminary injunction barring appellants from compelling him to comply with the Directive and requiring that he be released from solitary confinement. The district court granted a temporary restraining order to that effect on June 14, 1985. In an order entered July 10, the court denied appellants' motion of April 8 to dismiss the Ninth Claim of the amended complaint. The court also ordered consolidation of a hearing on appellee's motion for a preliminary injunction and a trial on the merits of the Ninth Claim. Fed.R.Civ.P. 65(a)(2).

At a six day consolidated hearing and trial in the Fall of 1985, the court heard evidence concerning appellee's religious beliefs and practices both before and during his incarceration; the place in Jewish law of the prohibition against trimming the beard; and the various justifications relied upon by the Department for the Directive.

In its opinion filed November 25, 1986, the court declared the Directive unconstitutional as applied to appellee and granted him permanent injunctive relief. *Fromer, supra,* 649 F.Supp. at 521–22.

In the judgment entered January 29, 1987 on the court's opinion, there was included a certificate pursuant to Fed.R. Civ.P. 54(b). This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1)(1982).

For the reasons set forth below, we affirm the judgment of the district court.

## II.

■ The First Amendment provides in pertinent part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." The latter clause—the free exercise clause—is the basis for appellee's challenge to the Directive. That clause is made applicable to the states by the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 303–07 (1940).

Although the free exercise clause by its terms appears to impose an absolute proscription on the power of the government, only an individual's *belief* is beyond governmental intrusion. The right to engage in a *practice* concomitant with religious belief always has been balanced against the state's interest in applying neutral rules of conduct evenhandedly to all citizens. *Reynolds v. United States,* 98 U.S. 145, 166 (1878) ("Laws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices."); *e.g., Hobbie v. Unemployment Appeals Commission,* 107 S.Ct. 1046, 1048–51 (1987); *Wisconsin v. Yoder,* 406 U.S. 205, 213–15 (1972).

The legal standard by which to evaluate the constitutionality of evenhanded application of a neutral restriction varies depending on the relationship between the individual asserting the right and the governmental entity imposing the restriction. Generally, an incidental limitation on the exercise of religion caused by application of a neutral law or regulation can be justified "only by proof by the State of a compelling interest." *Hobbie, supra,* 107 S.Ct. at 1049. A restriction that would be impermissible when evaluated under that test, however, may pass constitutional muster in the context of the military. *E.g., Goldman v.*

*Weinberger*, 475 U.S. 503, 507–08 (1986). This is because " '[j]udicial deference ... is at its apogee when legislative action under the congressional authority to raise and support armies and make rules and regulations for their governance is challenged.' " *Id.* at 508 (quoting *Rostker v. Goldberg*, 453 U.S. 57, 70 (1981)).

Where, as here, an inmate asserts a free exercise challenge to application of a neutral prison rule, special considerations require departure from the general legal standard reaffirmed in *Hobbie, supra,* 107 S.Ct. at 1049. True, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison", *Bell v. Wolfish*, 441 U.S. 520, 545 (1979), and "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty." *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972) (per curiam). Inmates, however, cannot expect the same freedom from incidental limitations on the exercise of their religious practices as that enjoyed by those not incarcerated. Such freedoms often permissibly are restricted in order to achieve legitimate correctional goals. In evaluating inmates' claims of constitutional deprivations, therefore, federal courts should "giv[e] appropriate deference to the decisions of prison administrators and appropriate recognition to the peculiar and restrictive circumstances of penal confinement." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977); *accord, Pell v. Procunier*, 417 U.S. 817, 822–23 (1974). Such deference plays a vital role in reaching the "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

In *Wali v. Coughlin*, 754 F.2d 1015 (2 Cir.1985), we carefully examined these special considerations, and the Supreme Court cases from which they are derived, *id.* at 1029–33, in enunciating the legal standards to be applied to constitutional challenges by inmates. While recognizing that, "[i]n the great majority of cases, it would be sheer folly for society to deny prison officials the discretion to act in accordance with their professional judgment", *id.* at 1018, we observed that "it would be an abrogation of our responsibility as judges to assume ... a 'hands off' posture, requiring categorical acquiescence in such judgments." *Id.* Accordingly, we articulated three standards "drawn by reference to the nature of the right being asserted by prisoners, the type of activity in which they seek to engage, and whether the challenged restriction works a total deprivation (as opposed to a mere limitation) on the exercise of that right." *Id.* at 1033.

The first standard applies where the right asserted by the prisoner "is found not to exist within the prison context, i.e., where it is held to be inherently inconsistent with established penological objectives". *Id.* In such cases, "the proper role of the court ends with the determination that the asserted right does not inhere within the prison's walls." *Id.*

The second standard—applicable if the assertedly protected activity is "presumptively dangerous" or if the challenged restriction "proscribe[s] only one of numerous available means of enjoying protected liberties"—places the burden on the prisoner "to demonstrate that the restriction is not supported by a reasonable justification." *Id.*

The third standard applies where "the activity in which prisoners seek to engage is not presumptively dangerous, and where official action (or inaction) works to deprive rather than merely limit the means of exercising a protected right". *Id.* "In these limited circumstances, it is incumbent upon prison officials to show that a particular restriction is necessary to further an important governmental interest, and that the limitations on freedoms occasioned by the restriction are no greater than necessary to effectuate the governmental objective involved." *Id.*

In the instant case, the district court held that the third standard of *Wali* applied to appellee's challenge to the Directive. *Fromer, supra,* 649 F.Supp. at 518. We

agree. Appellants make several arguments to support their claim that the court applied an incorrect legal standard. We shall examine each of appellants' arguments.

First, appellants argue that *Wali* does not apply to the instant case because it is factually distinguishable from *Wali*. In *Wali*, we struck down a content based restriction on the right of inmates to read certain printed material. Appellants contend that *Wali* should be confined to its facts and that, unlike the restriction in *Wali*, the Directive here involved is neutral on its face. We do not read *Wali* so narrowly. As must be apparent from our extended analysis in *Wali*, we intended to establish standards by which to evaluate constitutional claims of any nature brought by inmates.

Second, appellants urge us to adopt a standard not articulated in *Wali*. They assert that the "majority" of those circuits which have considered constitutional claims by inmates after *Bell, supra,* 441 U.S. 520, and *Jones, supra,* 433 U.S. 119, have applied the "exaggerated response" standard. They cite, *e.g., Tisdale v. Dobbs,* 807 F.2d 734, 739 n. 3 (8 Cir.1986) (declining to decide whether to adopt a " 'more restrictive than necessary' " standard since the inmate "did not present substantial evidence that the prison officials' belief was unreasonable or that their response to the security consideration was exaggerated") (quoting *Hill v. Blackwell,* 774 F.2d 338, 341 (8 Cir.1985)); *Caldwell v. Miller,* 790 F.2d 589, 596 (7 Cir.1986) ("Prison rules that restrain the free exercise of religion are justified only if they are 'reasonably adapted' to achieving an important penological objective"); *Madyun v. Franzen,* 704 F.2d 954, 960 n. 7 (7 Cir.1983) ("At least seven different standards for analyzing free exercise claims have been suggested"; no mention of "exaggerated response" standard).

An examination of these cases and others makes it clear that other circuits have not approached the problem with such uniformity as appellants would have us believe. More important, even if we were satisfied that there is the "majority" sug-gested by appellants, we would decline to accept their thinly disguised invitation to overrule *Wali* based on the decisions of other circuits either before or after *Wali*. We carefully analyzed *Bell, supra,* 441 U.S. 520, and *Jones, supra,* 433 U.S. 119, in formulating the three *Wali* standards. *Wali, supra,* 754 F.2d at 1029–34. In *Wali* we rejected appellant Coughlin's arguments based on those cases. *See* Brief for Appellant at 21–30 in *Wali, supra,* 754 F.2d 1015. We reject the same arguments again here.

Third, in another veiled invitation to overrule *Wali*, appellants argue that the instant case should be analogized to *Goldman, supra,* 475 U.S. 503. There the Supreme Court held that the interest of the Air Force in uniformity outweighed a commissioned officer's asserted right to wear a yarmulke indoors. The Court stated that, "when evaluating whether military needs justify a particular restriction on religiously motivated conduct, courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest." *Id.* at 507. We do not read *Goldman* as extending beyond the context of the military. The Supreme Court gave no indication that its holding or analysis was to apply outside the military where, the Court observed, " '[j]udicial deference ... is at its apogee' ". *Id.* at 508 (quoting *Rostker, supra,* 453 U.S. at 70).

Fourth, appellants argue that, even if *Wali* applies to appellee's challenge to the Directive, the district court erred in applying the third *Wali* standard. They argue that appellee's claim should be analyzed under the second *Wali* standard. They contend that a beard in excess of one inch in length is "presumptively dangerous" and that the Directive "proscribe[s] only one of numerous available means of enjoying protected liberties." *Wali, supra,* 754 F.2d at 1033. We disagree.

The evidence at trial of appellee's claim showed that the New York City, federal, and California prison systems all permit inmates to wear beards of any length. *See also Moskowitz v. Wilkinson,* 432 F.Supp.

947, 950 & n. 8 (D.Conn.1977) (Newman, J.) (20 states permit beards in all correctional facilities). A beard in excess of one inch in length therefore cannot be considered presumptively dangerous.

We also reject appellants' argument that the Directive does not work a total deprivation of appellee's asserted right since he is permitted to wear a short beard and to practice his religion in other ways. We indicated in *Wali* that a prison regulation does not work a total deprivation if it "does no more than define 'the time, place or manner' in which prisoners may enjoy a protected right". *Wali, supra,* 754 F.2d at 1033. Here, appellee asserts more than a right to practice Judaism in a general way or merely to wear a beard. He asserts a right to refrain from trimming, cutting, or shaving his beard. By its nature such a right can be enjoyed only at one "time, place or manner". The district court held, and we agree, that "requiring [appellee] to cut his facial hair would work a total deprivation of his religious belief that the beard must not be disturbed." *Fromer, supra,* 649 F.Supp. at 518.

Accordingly, we hold that the district court correctly applied the third *Wali* standard.

### III.

■ Under the third *Wali* standard, a district court must determine whether prison officials have sustained their burden of showing "that a particular restriction is necessary to further an important governmental interest, and that the limitations on freedoms occasioned by the restriction are no greater than necessary to effectuate the governmental objective involved." *Wali, supra,* 754 F.2d at 1033.

In the instant case, appellants claimed that the Directive was necessary to further the governmental objectives of identification of inmates, protection against hidden contraband, fairness to other inmates, and safety and hygiene. In its well reasoned and comprehensive opinion, the district court examined each of these governmental objectives, *Fromer, supra,* 649 F.Supp. at 519–21, and concluded that appellants had

failed to establish that the Directive is no greater than necessary to effectuate them. *Id.* at 519.

On appeal, appellants repeat those arguments made to, and properly ruled upon, by the district court. We have examined all of appellants' arguments on this claim and hold that they are without merit for the reasons stated by the district court. Further discussion by us would entail nothing more than a paraphrasing of a stellar district court opinion.

Accordingly, we hold that the district court correctly applied the third standard of *Wali.*

### IV.

To summarize:

In all but the most extraordinary cases, courts must pay high deference to decisions of prison officials which have the incidental effect of restricting inmates' constitutional rights. This well established principle was central to our formulation in *Wali* of the standards by which to evaluate inmates' claims of constitutional deprivations.

In the instant case, we agree with the district court that a beard in excess of one inch is not presumptively dangerous and that the Directive, if applied to appellee, would work a total deprivation of his religious belief that the beard must not be disturbed. Accordingly, we hold that the district court correctly concluded that appellee's challenge to the Directive falls into the narrow class of cases that should be evaluated under the third standard of *Wali.* We also hold that the court correctly applied that standard.

We affirm the judgment of the district court granting appellee declaratory and injunctive relief on his Ninth Claim in the amended complaint.

Affirmed.