**Yevgen FROMER, Plaintiff–Appellee,**

**v.**

**Charles J. SCULLY, Harold J. Smith, Walter Kelly, Everett W. Jones, Thomas A. Coughlin, III, and Hirshel Jaffee, Defendants–Appellants.**

**No. 717, Docket 88–7885.**

United States Court of Appeals, Second Circuit.

Argued Feb. 9, 1989.

Decided April 14, 1989.

Joel W. Sternman, New York City (Jean Simonoff Marx, Rosenman & Colin, New York City, of counsel), for plaintiff-appellee.

Martha O. Shoemaker, Asst. Atty. Gen., State of N.Y., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., Howard L. Zwickel, Chief, Litigation Bureau, State of N.Y., New York City, of counsel), for defendants-appellants.

Before FEINBERG, KEARSE and WINTER, Circuit Judges.

WINTER, Circuit Judge:

This is an appeal from Judge Stewart's decision holding a regulation of the Department of Correctional Services of New York State ("DOCS") concerning the length of inmates' beards unconstitutional as applied to appellee Yevgen Fromer. This matter has been before both the district court and this court before. The district court originally held the regulation in question unconstitutional in *Fromer v. Scully*, 649 F.Supp. 512 (S.D.N.Y.1986) (*"Fromer I"*). We affirmed that decision in *Fromer v. Scully*, 817 F.2d 227 (2d Cir.1987) (*"Fromer II"*). The Supreme Court, however, vacated that judgment and remanded, *Fromer v. Scully*, — U.S. —, 108 S.Ct. 254, 98 L.Ed.2d 211 (1987), for further consideration in light of *O'Lone v. Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), and *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). We in turn remanded. *Fromer v. Scully*, 837 F.2d 1086 (2d Cir.1987). On remand, the district court reaffirmed its prior decision. *Fromer v. Scully*, 693 F.Supp. 1536 (S.D.N.Y.1988) (*"Fromer III"*). We now reverse on the ground that the district court misapplied *O'Lone* and *Turner.*

## BACKGROUND

Because the detailed facts are reported in *Fromer I* and *Fromer II*, only a brief summary is necessary.

DOCS Directive No. 4914, *inter alia*, forbids inmates from wearing beards exceeding one inch in length. Until 1976, DOCS rules prohibited inmates from wearing any beard at all, *see Phillips v. Coughlin*, 586 F.Supp. 1281, 1283 (S.D.N.Y.1984), and Directive No. 4914 resulted from litigation brought in 1976 by two groups of plaintiffs. *Monroe v. Bombard*, 422 F.Supp. 211 (S.D.N.Y.1976). The first group consisted of Sunni Moslem inmates who challenged the prohibition as an infringement of their right to exercise their religion. The second group consisted of inmates who claimed that medical necessity required them to grow beards and that the prohibition violated the Eighth Amendment. During the pendency of the *Monroe* litigation, the Commissioner of DOCS promulgated the original version of Directive No. 4914, which provided, *inter alia*, that after an initial shave and haircut, Sunni Moslems, but not other inmates, could grow beards

to a length of one inch. Shortly thereafter, the district court held the prior no-beard rule unconstitutional. *Monroe,* 422 F.Supp. at 215 n. 5, 218. In 1977, Directive No. 4914 was modified to apply to all inmates.

Directive No. 4914 was then challenged by Moslem and other inmates who sought to wear groomed beards in accordance with their religious beliefs or were required to grow beards for medical reasons. *Webb v. Dalsheim,* 80 Civ. 7141 (S.D.N.Y.) (LBS); *Farrad v. Walters,* 81 Civ. 2705 (S.D.N.Y.) (LBS). Those suits resulted in a settlement approved by the district court. That settlement formed the basis for the final version of Directive No. 4914 that is challenged here, which allows all inmates to maintain a one-inch beard following an initial clean shave identification photograph.

Appellee Fromer's challenge to Directive No. 4914 is founded on his claimed right of the free exercise of the Jewish religion. Raised in a small Jewish community in the Ukraine, Soviet Union, Fromer has, for most of his life, been an Orthodox Jew. After emigrating to the United States, he became involved in the Lubavitch Hasidic movement. He lapsed in his observance of Jewish laws in 1980, however, at which time he shaved off his beard. In 1983, he was convicted of selling cocaine. During his subsequent imprisonment, he decided to return to the observance of Jewish laws.

Fromer understood Jewish law to require him neither to trim nor to shave his beard, a belief that brought him afoul of Directive No. 4914. A series of disciplinary confrontations with DOCS ensued, and in August 1984 Fromer filed a *pro se* complaint alleging generally the deprivation of his religious freedom. After the appointment of counsel, he filed an amended complaint which, *inter alia,* specifically challenged Directive No. 4914.

A six-day bench trial followed, in which the district court heard testimony from a DOCS witness that the one-inch limit on beards was necessitated by a variety of government interests. First, the DOCS witness testified that beards longer than one inch would cause prison officials diffi-

culty in identifying inmates. *Fromer I,* 649 F.Supp. at 519–20. Second, he stated that contraband of various types could be hidden in beards longer than one-inch. 649 F.Supp. at 520–21. Third, he testified that the one-inch regulation was "a neutral, consistent rule that can be understood easily by both staff and inmates," and that alternative regulations were likely to breed resentment among inmates as well as confrontations between inmates and guards. *Id.* at 521. Finally, he testified that untrimmed beards presented safety and hygiene hazards when worn by inmates assigned to food service or to the operation of machinery. *Id.* Fromer offered expert testimony tending to disprove the existence of the governmental interests claimed by DOCS.

In evaluating Fromer's claims, the district court applied the then-prevailing rule of this circuit enunciated in *Wali v. Coughlin,* 754 F.2d 1015 (2d Cir.1985). The *Wali* decision had established three different standards to be applied in specified circumstances. Where the right asserted was inherently inconsistent with established penological objectives, *Wali* required nearly absolute judicial deference to the judgment of corrections officials. Where the activity sought to be engaged in was presumptively dangerous, *Wali* called for broad, though not categorical, deference. Finally, where the activity sought to be engaged in was not presumptively dangerous, *Wali* required prison officials to show "that a particular restriction is necessary to further an important governmental interest, and that the limitations on freedoms occasioned by the restriction are no greater than necessary to effectuate the governmental objective involved." *Id.* at 1033.

The district court determined that the wearing of beards longer than one inch was not presumptively dangerous. Applying, therefore, the third of the *Wali* standards, the court held that Directive No. 4914 was unconstitutional. *Fromer I,* 649 F.Supp. at 521. With regard to identification, the district court credited the testimony of Fromer's witness that one-inch beards disguised inmates' facial features

no less than did longer beards. In addition, the court held that prison officials had available to them "the less restrictive means of rephotographing the inmate whenever the growth of his beard significantly changes his appearance." *Id.* at 520. With regard to the concealment of contraband, the court found that inmates could conceal contraband in parts of their persons other than their beards, and that prison officials had available to them the less restrictive means of conducting beard searches. *Id.* at 521.

In considering possible inmate resentment, the court noted that religions other than Judaism received special accommodation and credited the testimony of Fromer's witness that "prisoners do not resent exemptions for other prisoners based on sincere religious beliefs." It therefore held that the risk of resentment "d[id] not justify the impairment of Fromer's ability to observe his religious beliefs by growing his beard." *Id.* Finally, with regard to safety and hygiene, the court found that long beards posed no greater difficulty than long hair (which is allowed by prison regulations) and that other means were available to prison officials in the form of requiring beard guards and various sanitary measures. *Id.* Accordingly, the district court found Directive No. 4914 unconstitutional under the *Wali* standard. We affirmed. *Fromer II,* 817 F.2d at 232.

Following that affirmance, however, the Supreme Court expressly rejected *Wali* in *O'Lone* and *Turner.* Explaining that a less stringent test was needed "[t]o ensure that courts afford appropriate deference to prison officials," *O'Lone,* 107 S.Ct. at 2404, the Court directed lower courts to determine whether a challenged regulation is " 'reasonably related to legitimate penological interests.' " *O'Lone,* 107 S.Ct. at 2404 & n. ** (rejecting *Wali* and quoting *Turner,* 107 S.Ct. at 2261). The Court designated four factors governing the review of prison regulations: (i) whether there is a " 'valid, rational connection' " between the prison regulation and the legitimate governmental interest put forward to justify it, *Turner,* 107 S.Ct. at 2262 (quoting *Block v. Rutherford,* 468 U.S. 576, 586, 104 S.Ct.

3227, 3232, 82 L.Ed.2d 438 (1984)); (ii) "whether there are alternative means of exercising the right that remain open to prison inmates," *id.;* (iii) "the impact accommodation of the asserted constitutional right will have no guards and other inmates, and on the allocation of prison resources generally," *id.;* and (iv) "the absence of ready alternatives [as] evidence of the reasonableness of a prison regulation." *Id.* (citing *Block,* 468 U.S. at 587, 104 S.Ct. at 3233). With regard to factor (iv), the Court noted that "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id.;* cf. *Bell v. Wolfish,* 441 U.S. 520, 551, 99 S.Ct. 1861, 1880, 60 L.Ed.2d 447 (1979); *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974). The Court, however, added that its willingness to countenance the rejection of "exaggerated response[s]" did not amount to a "least restrictive alternative" test. *Turner,* 107 S.Ct. at 2262.

Applying this deferential standard, the Supreme Court upheld two of the three prison regulations before it in *O'Lone* and *Turner.* *Turner* involved prison regulations restricting inter-prison correspondence and marriages between inmates. The Court upheld the restriction on inter-prison correspondence, citing legitimate security interests in preventing the formation of gangs. *Turner,* 107 S.Ct. at 2263–64. However, a restriction on marriages between inmates was held unconstitutional on the ground that there was "no logical connection" between the marriage restriction and the proffered government interest in avoiding love triangles. *Turner,* 107 S.Ct. at 2266. In *O'Lone,* the Court upheld curtailment of inmates' rights to attend Jumu'ah, a religious service of importance to Moslems, as adequately justified by governmental interests in order, security and rehabilitation. *Id.* at 2405–07.

In light of *O'Lone* and *Turner,* the Supreme Court granted the petition for certiorari of the appellants in the instant case, vacated the judgment and remanded to this court. *Fromer v. Scully,* —— U.S. ——,

108 S.Ct. 254, 98 L.Ed.2d 211 (1987). We, in turn, remanded to the district court. *Fromer v. Scully,* 837 F.2d 1086 (2d Cir. 1987).

In the meantime, Fromer had been released on parole. On remand, the district court accordingly considered Fromer's challenge to Directive No. 4914 only to the extent that Fromer sought to have references to his violation of Directive No. 4914 expunged from his disciplinary record. Reviewing the trial record, the district court held that, even under the test established by *O'Lone* and *Turner,* Directive No. 4914 was unconstitutional as applied to Fromer. Reviewing the *Turner* factors seriatim, the court held that there was no "valid rational connection" between Directive No. 4914 and DOCS' claimed interests in inmate identification, detection of contraband, or safety and hygiene. In particular, the court reaffirmed its earlier finding that it was "not persuaded" by DOCS' identification rationale, and further stated that there was "no logical connection" between the one-inch beard limitation and the claimed identification interest. *Fromer III,* 693 F.Supp. at 1540–41 (quoting *Turner,* 107 S.Ct. at 2266). The court next noted that no evidence had been offered of inmates' concealing contraband in beards, and therefore rejected the detection of contraband as a justifying governmental interest. *Id.* at 1541.

As for DOCS' claimed safety and hygiene concerns, the court held that Directive No. 4914 represented "an arbitrary and irrational response to perceived problems easily remedied in other ways." *Id.* Turning to the second *Turner* factor, the court held that the availability of alternative means for Fromer to exercise his religion, such as his ability to wear a yarmulke, did not "mitigate the total deprivation of his right to leave his beard untouched." *Id.* at 1541–42. As to the third *Turner* factor, the court held that accommodating Fromer's claimed right would not have a significant impact on guards, other inmates, or the allocation of prison resources, because prison officials could rephotograph and search inmates with beards without significantly increasing expenses

or exacerbating the risk of confrontation among inmates or between inmates and guards. The court added that accommodation of Fromer's claimed right would have only an insignificant impact in light of what the court believed to be the small number of Orthodox Jews in prisons. *Id.* at 1543–44. Finally, the court held that prison officials had "easy alternatives" to the one-inch beard regulation in the form of rephotographing and searching. In light of these "easy alternatives," the court held that Directive No. 4914 represented an "exaggerated response" to prison concerns proscribed under *Turner* and *O'Lone. Id.* at 1544. Accordingly, the district court reaffirmed its earlier judgment.

## DISCUSSION

We believe that *Turner* and *O'Lone* call for greater deference to the judgment of prison officials than was given by the district court. The *O'Lone* Court thus stated:

[W]e have often said that evaluation of penological objectives is committed to the considered judgment of prison administrators, "who are actually charged with and trained in the running of the particular institution under examination." *Bell v. Wolfish, supra,* 441 U.S., at 562, 99 S.Ct., at 1886. See *Turner v. Safley, supra,* 482 U.S., at 86–87, 107 S.Ct., at 2262[–2263]. To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. See *e.g., Jones v. North Carolina Prisoners' Labor Union, Inc., supra,* 433 U.S., [119] at 128, 97 S.Ct., [2532] at 2539 [53 L.Ed.2d 629 (1977)]. We recently restated the proper standard: "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley, supra,* 482 U.S., at 89, 107 S.Ct., at 2261. This approach ensures the ability of correc-

tions officials "to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration," *ibid.*, and avoids unnecessary intrusion of the judiciary into problems particularly ill-suited to "resolution by decree." *Procunier v. Martinez, supra,* 416 U.S., [396] at 405, 94 S.Ct., [1800] at 1807–08 [40 L.Ed.2d 224 (1974)].

*O'Lone,* 107 S.Ct. at 2404–05 (footnote rejecting *Wali* omitted). The Court made it clear that it is improper to place the burden of justifying regulations on prison officials:

[W]e have rejected the notion that "prison officials ... have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner v. Safley, supra,* 482 U.S., at 90–91, 107 S.Ct., at 2262. By placing the burden on prison officials to disprove the availability of alternatives, the approach articulated by the Court of Appeals fails to reflect the respect and deference that the United States Constitution allows for the judgment of prison administrators.

*O'Lone,* 107 S.Ct. at 2405. *Cf. Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 127–28, 97 S.Ct. 2532, 2538–39, 53 L.Ed.2d 629 (1977).

■ Reviewing the *Turner* criteria, we first address whether a "valid, rational connection" exists between Directive No. 4914 and the various governmental interests put forward to justify it. The district court was "not persuaded" by DOCS' claim that there is a logical connection between the one-inch beard limitation and the interest of prison officials in identifying inmates. That finding is not dispositive under *Turner* and *O'Lone* because there was no burden on DOCS to persuade the district court that its concerns were justifiable. Rather, the burden was on the plaintiff to show that these concerns were irrational. Moreover, we believe there is a logical, if not obvious, connection between beard length and ease of identification of facial features. It is certainly not irrational to believe that a full beard, which may well extend for significant lengths sideways from the cheeks as well as downwards

from the chin, may impede identification more than a one-inch beard. We therefore must defer to that judgment of prison officials.

We note that other courts have recognized a "valid, rational connection" between beard restrictions and a legitimate penological interest in inmate identification and have upheld regulations forbidding the wearing of any beard whatsoever. *See, e.g., Brightly v. Wainwright,* 814 F.2d 612 (11th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 332, 98 L.Ed.2d 359 (1987); *Shabazz v. Barnauskas,* 790 F.2d 1536 (11th Cir.), *cert. denied,* 479 U.S. 1011, 107 S.Ct. 655, 93 L.Ed.2d 709 (1986); *Hill v. Blackwell,* 774 F.2d 338 (8th Cir.1985). This issue of a complete ban on beards is not before us on this appeal. We call attention to those decisions only to underline the undesirability of a legal rule that forces prison officials to take an all or nothing attitude in accommodating prisoners' wishes.

■ The regulation at issue was designed to compromise prisoners' desires for beards with the various concerns specified. Fromer now challenges the compromise on the grounds that only a clean-shaven rule satisfies those concerns and that permitting any beards leads to a constitutionally mandatory rule permitting all beards. We reject that approach as leading to perverse incentives for prison officials not to compromise with inmate desires lest all future demands be compared with the compromise rather than with minimal constitutional requirements. Nor are we swayed by the fact that some prison systems do allow full beards. It is true that *Fromer II* held that the fact that New York City, federal and California systems permitted full beards precluded a finding that one-inch beards were presumptively dangerous. *Fromer v. Scully,* 817 F.2d at 231–32. There, however, we addressed only the threshold test of presumptive dangerousness established by *Wali.* Because *Wali* is no longer the law, our prior holding is thus irrelevant. In any case, as *Turner* stated, "the Constitution 'does not mandate a "lowest common denominator" security standard, whereby a practice permitted at one penal institution

must be permitted at all institutions.'" *Turner*, 107 S.Ct. at 2264 n. ** (1987) (quoting *Bell v. Wolfish*, 441 U.S. 520, 554, 99 S.Ct. 1861, 1882, 60 L.Ed.2d 447 (1979)).

■ We take a similar view of the district court holding that prison officials did not demonstrate a "valid, rational connection" between Directive No. 4914 and the governmental interest in preventing the concealment of contraband. We see no merit whatsoever in Fromer's argument that, even if contraband can be hidden in inmates' beards, such beards must be permitted because inmates may also conceal contraband in other parts of their clothing or person. That argument would have us validate only regulations that left absolutely no hiding places on the person of prisoners. The fact that a prison uniform has one pocket hardly creates a constitutional imperative that several pockets be provided. Such an all or nothing approach would leave prison officials no leeway in designing workable search procedures. Here again, therefore, a "valid, rational connection" exists between the regulation and the governmental interest proffered to justify it. *Cf., e.g., Pollock v. Marshall*, 845 F.2d 656, 658–59 (6th Cir.) (discussing difficulties created by opportunities to conceal contraband in long hair), *cert. denied,* — U.S. ——, 109 S.Ct. 239, 102 L.Ed.2d 228 (1988); *Martinelli v. Dugger*, 817 F.2d 1499, 1506 n. 23 (11th Cir.1987) (same), *cert. denied,* — U.S. ——, 108 S.Ct. 714, 98 L.Ed.2d 664 (1988); *Cole v. Flick*, 758 F.2d 124, 131 (3d Cir.) (same), *cert. denied*, 474 U.S. 921, 106 S.Ct. 253, 88 L.Ed.2d 260 (1985).

We are also not persuaded by the fact that DOCS' expert witness could offer no examples of contraband discovered in inmates' beards. *Turner* obliges us to ensure the ability of prison officials "to *anticipate* security problems and to adopt innovative solutions." *Turner*, 107 S.Ct. at 2262 (emphasis added). We cannot, therefore, second-guess reasonable efforts at such anticipation. "[T]he intractable problems of prison administration," *id.*, would not be easily solved if prison officials were obliged to wait passively for inmates to disrupt prison security before acting. *See*

*also Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. at 132–33, 97 S.Ct. at 2541–42 (restrictions directed at potential problems appropriate).

■ We are equally unconvinced by the district court's application of the second *Turner* factor regarding alternative means of religious exercise. It held that means such as the wearing of a yarmulke did not "mitigate the total deprivation or his right to leave his. beard untouched." *Fromer III*, 693 F.Supp. at 1542. In *O'Lone*, however, inmates claimed the right to attend Jumu'ah, a Moslem service commanded by the Koran, attendance at which the *O'Lone* inmates sincerely considered to be compulsory. Certain policy changes at a New Jersey state prison had made it necessary for inmates to be outside prison buildings and thus unable to attend Jumu'ah. *O'Lone v. Estate of Shabazz*, 107 S.Ct. at 2402. The court of appeals had placed the burden on prison officials to show "that no reasonable method exists by which [prisoners'] religious rights can be accommodated without creating bona fide security problems." *Shabazz v. O'Lone*, 782 F.2d 416, 420 (3d Cir.1986) (en banc). The Supreme Court reversed, holding that this burden should not be on prison officials and that governmental interests in order, security and rehabilitation adequately justified the curtailment of inmates' rights. *O'Lone*, 107 S.Ct. at 2405–07. The Court also noted that, while Moslem inmates might be deprived of the opportunity to attend Jumu'ah, they were still able to "freely observe a number of their religious obligations," including dietary restrictions and the special requirements of Ramadan.

Here, as in *O'Lone*, Fromer remained "freely [able to] observe a number of [his] religious obligations," *id.* at 2406, including dietary restrictions similar to those at issue in *O'Lone*. We are unable to discern any distinguishing feature that would permit us to allow Orthodox Jews such as Fromer the unrestricted practice of their religion notwithstanding substantial conflicting governmental concerns when similar rights have been validly denied to Moslems. *Cf. also Matiyn v. Henderson*, 841 F.2d 31, 37 (2d Cir.) (upholding restrictions on muslim practice on basis of *O'Lone* ), *cert. denied,*

**76**

— U.S. ——, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988).

■ Regarding the third *Turner* factor, the impact on guards, other inmates and prison resources, we believe that the district court again failed to show the proper deference to the judgment of prison officials. To the extent that the district court rested its holding on its belief, unsupported by record evidence, that there are few Orthodox Jews in state-run prisons, it impermissibly placed the burden on prison officials. It was not the role of the district court, in determining "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," *Turner*, 107 S.Ct. at 2262, to, in effect, place on prison officials the burden of showing that there were large numbers of Orthodox Jews under their supervision. *Cf. Ross v. Coughlin*, 669 F.Supp. 1235, 1239–40 (S.D.N.Y.1987) (Orthodox Jew raising challenge to Directive No. 4914 based on *Fromer I* and *Fromer II*). Nor was it proper for the district court to disregard DOCS testimony as to the increased expense and potential for confrontation attendant upon allowing Orthodox Jews an exemption. Prison officials may attach significance to the dangers of an "appearance of favoritism" and of "opportunities for confrontation" that allowing such an exemption and instituting a regime of beard searches would entail. *Standing Deer v. Carlson*, 831 F.2d 1525, 1529 (9th Cir.1987) (citing *O'Lone*, 107 S.Ct. at 2406). Prison officials may also be allowed to determine whether to expend scarce resources on regular rephotographing of inmates.

■ We turn finally to the fourth *Turner* factor that requires plaintiffs such as Fromer to show that there are obvious, easy "alternative[s] ... [that] fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests...." *Turner*, 107 S.Ct. at 2262; *cf. Rodriguez v. James*, 823 F.2d 8, 12–13 (2d Cir.1987). We do not agree with the district court's conclusion that "[r]ephotographing inmates at their own expense and searching their

beards for contraband" offer "obvious, easy alternatives" at *de minimis* cost. *Fromer III*, 693 F.Supp. at 1544. The district court had before it DOCS testimony to the effect that serial rephotography does not serve all the penological objectives that must concern prison officials. Thus, prison officials maintain prison photographs in part in order to be able to circulate accurate likenesses in the event of an escape—a purpose easily thwarted if inmates may simply shave the beards that appear on their photographs. Moreover, financial costs, which in these circumstances may not be *de minimis*, are not the only costs that prison officials must consider. Like other courts, we believe the disciplinary and administrative problems entailed by regular rephotographing are more than *de minimis*.[1] *See Shabazz v. Barnauskas*, 790 F.2d at 1540; *Hill v. Blackwell*, 774 F.2d at 346. Fromer, therefore, "simply h[as] not met [his] heavy burden of showing that [prison] officials have exaggerated their response to ... genuine security considerations...." *Bell v. Wolfish*, 441 U.S. at 561–62, 99 S.Ct. at 1885–86.

Reversed.

---

1. Our disposition of the case makes it unnecessary to address the parties' differences regard-

ing safety and hygiene.