USCA1 Opinion

 

 April 23, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1822 RICHARD A. STREET, Plaintiff, Appellant, v. MICHAEL T. MALONEY, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Selya and Cyr, Circuit Judges. ______________ ____________________ Richard A. Street on brief pro se. _________________ Irene M. Carr, Counsel, Department of Correction, and Nancy _______________ _____ Ankers White, Special Assistant Attorney General, on brief for _____________ appellees. ____________________ ____________________ Per Curiam. Plaintiff-appellant Richard A. Street, __________ a Massachusetts prison inmate, appeals the grant of summary judgment in favor of defendant correctional officials. Summary judgment was entered by the district court after this court upheld the dismissal of certain claims but reversed the dismissal of plaintiff's free exercise and equal protection claims. Street v. Maloney, No. 90-1280, slip op. (Dec. 29, ______ _______ 1990). For the reasons that follow, we vacate and remand. I I _ Street is an adherent of a sect of the Hindu religion commonly known as Hare Krishna. He initiated this action under 42 U.S.C. 1983 after prayer beads and a religious necklace that he had ordered in 1988 were confiscated by prison officials. At the time, Street was confined to the Departmental Segregation Unit (DSU), the prison's highest security unit. His amended complaint charged that defendants Smith, the prison property officer, Captain Gallagher, then administrator of the DSU, Maloney and Raikey, former and present prison superintendents, and Hall, a former deputy superintendent, were responsible, in their individual and official capacities, for the expropriation. The core of Street's complaint is that the defendants infringed his First and Fourteenth Amendment rights to free exercise of religion and equal protection of the laws by confiscating the prayer beads and religious necklace while at the same time allowing Roman Catholic inmates to possess rosary beads and wear crucifixes.1 On remand, the defendants moved for summary judgment. They argued that 1) the confiscation of the plaintiff's prayer beads was justified because of their "great potential as a dangerous weapon," 2) the unusual security risks posed by the prayer beads constituted a rational basis for any difference in treatment between the plaintiff and Catholic inmates, 3) the claims against Captain Gallagher should be dismissed under Fed. R. Civ. P. 4(j) because of failure to effect service of process, and 4) the claims against the remaining defendants should be dismissed because of plaintiff's failure to individuate the claims, that is, to allege facts showing which defendants performed the acts that purportedly impaired his constitutional rights. Defendants' motion was supported by Smith's two- page affidavit. As the prison property officer, Smith was ____________________ 1. Plaintiff's amended complaint also alleged that the confiscation was in contravention of the Fourth Amendment right to be free of unreasonable seizures and the Fourteenth Amendment right to due process, and that the processing of the incoming religious items violated institutional regulations regarding inmate mail. Defendants here assert that only plaintiff's free exercise/equal protection claims survive our prior ruling in this case. We reject that contention. Our prior opinion explained that because plaintiff's amended complaint was not in the record, we would not presume that it was before the district court and, consequently, we would not address the allegations therein. Thus, plaintiff remained free to pursue the above-mentioned claims on remand. -3- responsible for handling all incoming property, maintaining records of cell contents and contraband, and transferring property to other institutions. Smith recalled that plaintiff's prayer beads consisted of "approximately 100 beads strung together on a strong cord and joined to form a circle which measured approximately 36 inches, doubled." The beads, he attested, "were a solid, hard material" and "were large, approximately 3/4 inch in diameter." The prayer beads "did not resemble in any way the rosary beads which are allowed inside the institution. The rosary beads that are allowed . . . generally consist of very small hollow plastic beads joined on a weak chain with small, easily breakable links." Based on his experience, Smith felt that plaintiff's prayer beads "posed a security risk to the institution because of their potential use as weapons such as a `sap', `numchucks', or as a `garotte'."2 Finally, Smith affirmed that DSU inmates "have been placed there as a result of the most serious rules violations, involving violent and extremely disruptive behavior," and that "the DSU administrator and the officer in charge of the West Wing Segregation Unit also saw the beads and determined that they ____________________ 2. According to Smith, a "sap" consists of a sock or similar container into which hard objects are placed, and which is used to inflict blows; "numchucks" are sets of batons connected by a length of cable or chain, used for a similar purpose; a "garrotte" is a cord, thong, or length of wire, used to strangle a victim. -4- must be removed because of the serious security concerns they posed." The affidavit identified neither of the other two officers by name. Plaintiff's opposition contested the rationality of the defendants' asserted security justification. In an accompanying affidavit, Street stated that the 108 knotted beads were 1/2 inch in diameter and made of very light- weight, easily breakable wood, similar to balsa wood. "The beads are not solid, but are hollow, like Catholic rosary beads, with a hole in the center so they can be strung on a string." The string, about 36 inches long and 1/64 inch around, was asserted to be very weak and easily broken. The religious necklace was described as 18 inches long consisting of 54 tiny wooden beads (3/16 inch long and 1/8 inch in diameter) strung on a "thin weak string" which a young child could "easily break." With respect to his religion, Street's affidavit explained that his faith required 1728 repetitions of a particular mantra daily, using special prayer beads. The plaintiff claimed that "[w]ithout said beads it is not possible for me to obey this commandment of my religion." Street maintained that he had been allowed prayer beads during a 1985 confinement in the DSU, and that after his return there in June 1988 he received permission from Hall to order the beads. When they arrived, however, Captain -5- Gallagher refused to allow him to have them. Street protested to Hall, and to Hall's superiors, Raikey and Maloney, about the confiscation, but they refused to intervene. Street declared that neither he nor the sender received the required notice that the beads were considered contraband. Finally, Street's affidavit asserted that his jailers said to him that "the Hare Krishnas are fools and worship a false God." The district court granted the defendants' motion for summary judgment. The court's order states in its entirety: Motion allowed. Alleged refusal to permit inmate to possess hare krishna [sic] beads and necklace in the Departmental Segregation Unit is not violative of Plaintiff's Constitutional rights, as such refusal is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. ______ ______ 78, 85 (1987). The standard of review is familiar, see, e.g., Garside v. ___ ____ _______ Osco Drug, Inc., 895 F.2d 46, 48-49 (1st Cir. 1990), and it _______________ would be pleonastic to repeat the standard here. II II __ Prison restrictions that implicate constitutional rights are judged by the reasonableness standard. See ___ Washington v. Harper, 494 U.S. 210, 224 (1990); O'Lone v. __________ ______ ______ Estate of Shabazz, 482 U.S. 342 (1987); Turner v. Safley, 482 _________________ ______ ______ U.S. 78 (1987). Under this standard, an inmate's First Amendment right must yield to prison rules and regulations -6- that are "reasonably related to legitimate penological interest." Turner, 482 U.S. at 89. To ensure that judges ______ accord appropriate deference to decisions of prison administrators anent the delicate balance of these competing principles, the Court put in place a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone, ______ 482 U.S. at 349 (punctuation and citation omitted). Thus, if prohibiting plaintiff's possession of certain paraphernalia in the DSU strikes a reasonable balance between the right to free exercise of religion and the prison's asserted interest in security, plaintiff's First Amendment claim will fail.3 See Reed v. Faulkner, 842 F.2d 960, 962 (7th Cir. 1988). ___ ____ ________ The parties have briefed the appeal in terms of the Turner rubric. Assuming, arguendo, that Turner applies to ______ ________ ______ the individualized decision here at issue, see, e.g., Frazier ___ ____ _______ v. Dubois, 922 F.2d 560, 562 (10th Cir. 1990) (applying ______ Turner to an individualized prison action), the Turner Court ______ ______ identified four factors that "are relevant to, and that serve to channel, the reasonableness inquiry." Thornburgh v. __________ Abbott, 490 U.S. 401, 414 (1989). In O'Lone, where the ______ ______ curtailment of Muslim inmates' rights to attend religious ____________________ 3. We assume, for present purposes, the sincerity of Street's professed religious beliefs. Since defendants elected not to dispute this issue below, they cannot dispute it for the first time on appeal. -7- services was upheld, the Court summarized the Turner factors ______ in the following manner: 1) Does the challenged regulation have a logical connection to the legitimate governmental interests invoked to justify it? 2) Do alternative means of exercising the right remain open to prison inmates? 3) What impact would the accommodation of the inmate's asserted right have on other inmates, on prison personnel, and on prison resources generally? 4) Are there obvious, easy alternatives to the policy adopted by the prison administrators? O'Lone, 482 U.S. at 350-53 (citing Turner, 482 U.S. at 89-90, ______ ______ 93). These factors have regularly been applied in determining whether a prison policy violates an inmate's free exercise rights. See, e.g., Abdullah v. Gunter, 949 F.2d ___ ____ ________ ______ 1032, 1035-36 (8th Cir. 1991), cert. denied, 112 S. Ct. 1995 _____ ______ (1992); Fromer v. Scully, 874 F.2d 69, 74-76 (2d Cir. 1989); ______ ______ Cooper v. Tard, 855 F.2d 125, 128-30 (3d Cir. 1988); Williams ______ ____ ________ v. Lane, 851 F.2d 867, 876-78 (7th Cir. 1988), cert. denied, ____ _____ ______ 488 U.S. 1047 (1989); cf. Skelton v. Pri-Cor Inc., 963 F.2d ___ _______ ____________ 100, 103-04 (6th Cir. 1991). III III ___ With respect to plaintiff's free exercise claim, we think that genuine issues of material fact precluded brevis ______ disposition. There are, for example, unanswered questions of fact as to the composition of the prayer beads (weight, -8- density, etc.) which, in turn, prevent a determination of whether the ban on them is reasonable, or, for that matter, whether rosary beads in the hands of other DSU inmates are deserving of materially different treatment. We accept the defendants' legitimate concern that religious items in the possession of inmates may lead to security problems. But, we believe that the plaintiff has sufficiently put into question the possible danger to the security of the prison posed by the prayer beads here at issue. It also seems logical that the more solitary a religious practice, the less plausible is the claim that an institutional security interest is compromised. Turner ______ instructs that "a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." Turner, 482 U.S. at 89-90. Unlike free ______ exercise claims involving otherwise non-religious items (diet, grooming, name changes, and the like) or those involving group associations (such as congregate worship), any of which might impact the general prison population, the religious activity associated with the described use of the prayer beads appears to involve solely private conduct. The significance of this fact is highlighted here because, as plaintiff points out, he would never be able to take the prayer beads outside his cell; according to him, DSU inmates -9- are uniformly searched, cuffed, and shackled before leaving their cells. Such a restriction, if true - - and defendants have not challenged the veracity of plaintiff's account - - posits an accommodation that both undercuts defendants' stated security concerns and raises questions as to whether they overreacted in denying Street the prayer beads. Cf. id. ___ ___ at 90 (under the fourth factor of the test, "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an `exaggerated response' to prison concerns") (citation omitted). We note, therefore, without implying any view of the merits, that the record reveals a genuine question as to whether defendants' justification is sufficient to outlaw the prayer beads.4 See Mosier v. Maynard, 937 F.2d 1521, 1527 ___ ______ _______ (10th Cir. 1991) (remanding for factual development and application of Turner factors where plaintiff raised a ______ genuine issue of material fact as to the reasonableness of a prison policy); Swift v. Lewis, 901 F.2d 730, 731-32 (9th _____ _____ Cir. 1990) (vacating summary judgment in favor of prison officials in the absence of evidence that officials' asserted ____________________ 4. Although we have been discussing plaintiff's prayer beads to this point, the same analysis applies to plaintiff's religious necklace. Appellees, in their brief, argue that the physical characteristics of the beads and the necklace are so similar as to be virtually indistinguishable from one another, and that both items pose the same security risks. On remand, of course, the defendants will have an opportunity to revisit this issue, should they so desire. -10- reason for prison grooming policy justified treating appellants differently from other religious groups); see also ___ ____ Ali v. Dixon, 912 F.2d 86, 91 (4th Cir. 1990); Hunafa v. ___ _____ ______ Murphy, 907 F.2d 46, 48 (7th Cir. 1990); cf. Friend v. ______ ___ ______ Kolodzieczak, 923 F.2d 126 (9th Cir. 1991) (affirming summary ____________ judgment in favor of prison officials because regulation prohibiting Roman Catholic inmates from possessing rosaries in their cells satisfied Turner test).5 ______ IV IV __ We turn next to plaintiff's claim that he has been subjected to differential treatment because of his religion. The essence of the Equal Protection Clause is that government should treat similarly situated persons alike. See, e.g., ___ ____ Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432 ________ ______________________________ (1985). Prison administrators confronted with an equal protection claim "need only demonstrate a rational basis for their distinctions between organizational groups." Jones v. _____ North Carolina Prisoners' Union, 433 U.S. 119, 134 (1977). ________________________________ Courts must defer to such differentiation unless it is clear that "the two groups are so similar that discretion has been abused." Id. at 136; see also Feeley v. Sampson, 570 F.2d ___ ___ ____ ______ _______ 364, 371 (1st Cir. 1978) (explaining that prison authorities' ____________________ 5. Because the case must be remanded to resolve the questions we have mentioned, we need not address the second and third Turner factors. We think it fitting to note, ______ however, that neither defendants' moving papers nor the district court's order addressed either point. -11- decisions cannot be arbitrary); Nadeau v. Helgemoe, 561 F.2d ______ ________ 411, 416 (1st Cir. 1977) (similar). Thus, so long as the prison officials' response is shown to be rationally supported, an equal protection claim must fail. See Reed, ___ ____ 842 F.2d at 962; Brandon v. District of Columbia Bd. of _______ _____________________________ Parole, 823 F.2d 644, 650 (D.C. Cir. 1987). Conversely, ______ arbitrary enforcement of a stated security rationale violates prisoners' rights. See, e.g., Benjamin v. Coughlin, 905 F.2d ___ ____ ________ ________ 571, 578 (2d Cir.), cert. denied, 498 U.S. 951 (1990). _____ ______ Here, it is undisputed that Roman Catholic inmates in the DSU are allowed rosary beads. How prison authorities have accommodated other religions is relevant, but not determinative, in deciding whether a plaintiff has been treated in an unduly restrictive manner. See Feeley, 570 ___ ______ F.2d at 371. Assuming that prayer beads and rosary beads can be equated for purposes of equal protection analysis, see id. ___ ___ at 375; Hatch v. Sharp, 919 F.2d 1266, 1268-69 (7th Cir. _____ _____ 1990), cert. denied, 111 S. Ct. 1693 (1991), it is not _____ ______ obvious if (or how) the asserted security concerns posed by plaintiff's confiscated prayer beads and necklace6 were satisfied so as to permit another religious group in the DSU to possess rosary beads. If the comparison between prayer and rosary beads can fairly be made, such differing ____________________ 6. The defendants' affidavit is silent anent the wearing of religious necklaces or crucifixes in the DSU. -12- restrictions point to (but, again, are not conclusive of) "possible arbitrariness." Feeley, 570 F.2d at 364. As ______ noted earlier, the defendants' affidavit describing the type of rosary beads that are "generally" allowed to others was sufficiently countered by the plaintiff's opposing affidavit so as to create material questions as to the relative and relevant differences between the religious items in question. The affidavits also leave unresolved questions about whether the treatment accorded the plaintiff was disparate or intentional. These conflicts preclude summary judgment on this count. V V _ We need go no further. We have considered most of the parties' other arguments on appeal and find them to be without merit.7 We hold, however, on the present record, that the district court erred to the extent that it accepted defendants' proffered security rationale as conclusive. ____________________ 7. We say "most" rather than "all" because the district court did not address two other questions raised on defendants' motion for summary judgment, namely, a supposed failure to allege defendants' personal involvement and an asserted service-of-process deficiency. We take no view of these issues. See Nereida-Gonzalez v. Tirado-Delgado, No. ___ ________________ ______________ 92-2084, slip op. at 13 (1st Cir. April 14, 1993). We do note, however, plaintiff's sworn statement that despite repeated requests on his part, prison officials have not provided him with the address of a defendant who has left their employ. On remand, plaintiff should be afforded another opportunity to perfect service of process on this defendant. By the same token, defendants remain free to reassert the defenses mentioned. -13- Accordingly, since the facts surrounding defendants' justification for refusing to allow plaintiff to possess prayer beads and a religious necklace in the DSU require further development, we vacate the grant of summary judgment in favor of the defendants, and remand for further proceedings to be held before another trier pursuant to D. Mass. Loc. R. 40.1(i). Vacated and remanded. Costs to appellant. ____________________ __________________ -14-