Joe Lowell McELYEA, Jr.,
Plaintiff–Appellant,

v.

Governor Bruce BABBITT et al.,
Defendant–Appellee.

No. 86–1845.

United States Court of Appeals,
Ninth Circuit.

Submitted June 10, 1987.[*]

Decided Nov. 30, 1987.

J. Douglas McVay, Phoenix, Ariz., for plaintiff-appellant.

Kimberly A. O'Connor, Asst. U.S. Atty., Phoenix, Ariz., for defendant-appellee.

---

[*] The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Before FLETCHER, REINHARDT and KOZINSKI, Circuit Judges.

PER CURIAM:

Plaintiff–Appellant Joe McElyea brought this action *pro se* under 42 U.S.C. § 1983 alleging that prison authorities prevented him from practicing his religion in violation of the free exercise clause of the first amendment. The district court awarded summary judgment in favor of the defendants. We reverse and remand.

## FACTS

Joe McElyea is incarcerated in the Arizona State Prison in Perryville, Arizona. This action for injunctive relief and monetary damages arises out of his claim that the defendants have denied him his right to practice his religion. Specifically, he asserts that (1) there were no weekly Jewish services conducted at the prison; (2) he was unreasonably denied permission to attend a special service on the High Holy Days; (3) he was unable to obtain a kosher diet; and (4) there were no Jewish religious writings available at the prison.

At the start of the proceedings, the district court entered an order finding that McElyea's complaint stated a claim and directed service be made on two of the defendants. The defendants moved for an extension of time to respond to the complaint. This motion was granted. McElyea filed a petition for addition of evidence, attaching a letter from a representative of the Jewish Prison Services deploring inadequate attention to the religious needs of Jewish prisoners.

Thereafter, the defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Included with this motion was an affidavit of Chaplain John Voth stating that (1) regular religious services were held upon request; (2) a prisoner needed to obtain special permission to attend a special service and that McElyea refused to comply with the procedures; (3) defendants were unable to verify that McElyea was Jewish because he had recently arrived at the prison; (4) a religious diet was available at the prison, but defendants had learned that while McElyea was incarcerated at a different prison, he had not maintained a kosher diet. McElyea filed a motion for additional time and a motion for appointment of counsel. These motions were never addressed by the district court. The court converted the defendants' motion into a motion for summary judgment and granted the motion on January 21, 1986. Judgment was entered and filed the following day. McElyea timely appeals.

## DISCUSSION

McElyea asserts that the district court erred in considering the Voth affidavit and thereby converting, pursuant to Fed.R.Civ. P. 12(b), the defendants' motion to dismiss into a motion for summary judgment. This claim lacks merit. McElyea advances no reason why the Voth affidavit should have been excluded. Rather, his claims challenge the fairness of granting summary judgment in light of his difficulties in presenting evidence to the court. We consider these claims below.

■ The right to exercise religious practices and beliefs does not terminate at the prison door. *O'Lone v. Shabazz,* — U.S. ——, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987); *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security. *O'Lone,* 107 S.Ct. at 2404. We determine whether these competing interests are balanced properly by applying a "reasonableness" test: " '[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.' " *Id.* (quoting *Turner v. Safley,* — U.S. ——, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)).

■ McElyea's complaint has been verified; because it is based on personal knowledge and sets forth specific facts admissible in evidence, it may be considered in opposition to summary judgment. *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th

Cir.1985).[1] McElyea also submitted a letter from Rick Ross, a representative of the Jewish Prison Services to Alex Machain, a Perryville Chaplain. Although this letter has not been authenticated, *see Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir.1982) (finding that Rule 56, as supplemented by the Local Rules, requires that documents be authenticated "by affidavits or declaration of persons with personal knowledge through whom they could be introduced at trial"), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983), it should be considered in McElyea's opposition to summary judgment because he was not made aware that the motion was being treated as one for summary judgment, placing on him the burden to file counteraffidavits. *Garaux v. Pulley*, 739 F.2d 437 (9th Cir.1984). The defendants submitted a four-page affidavit of Perryville Chaplain Voth. We consider each of McElyea's claims in turn.

▪ McElyea has alleged that regular Sabbath services are not held at Perryville. The Ross letter refers generally to the "frequent failure [of Perryville authorities] to facilitate weekly observances". Ross adds specifically that inmates in the Santa Cruz unit "make the emphatic request" that they be permitted to conduct weekly services. The State does not make a legal argument that McElyea is not entitled to religious services for some security or correctional reason. It relies instead on the Voth affidavit, which refutes McElyea's allegations by stating that weekly Jewish services are held and that McElyea never requested permission to participate. The dispute as to whether McElyea has expressed an interest in worship, *see, e.g., Caldwell v. Miller*, 790 F.2d 589, 595–600

(7th Cir.1986), compels the conclusion that McElyea has raised a genuine issue of material fact and that summary judgment was granted inappropriately on this issue.

▪ Inmates also have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion. *See Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir.1975); *cf.* 28 C.F.R. §§ 547.20(d); 548.23(a) (federal inmates to be provided with food consistent with religious dietary requirements to extent security and budgetary considerations permit). McElyea has alleged that he has not received a kosher diet at Perryville. This contention is supported generally by Ross's statement that there are problems in Perryville with provision of a kosher diet. The Voth affidavit does not state expressly whether prison authorities provided McElyea with a kosher diet and, if not, the reason for this decision. *See, e.g., Walker v. Blackwell*, 411 F.2d 23 (5th Cir. 1969) (security risk and budgetary constraint in providing special food to particular inmates).[2] It states merely that McElyea's religious records had not arrived at Perryville and that Voth had doubts about McElyea's religious convictions because he was told that he had not kept to a kosher diet in the prison in which he was previously confined. It is appropriate for prison authorities to deny a special diet if an inmate is not sincere in his religious beliefs. Nonetheless, we do not find Voth's reliance on second-hand knowledge of past behavior to be a reasonable method of determining religious commitment. We are concerned that a slipshod investigation could have prevented a legitimate adherent from following the dictates of his faith. We there-

---

1. *Celotex Corp. v. Catlett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) does not suggest a different result where the complaint is, in effect, an affidavit—the contents are based on personal knowledge and verified by the complainant. In *Lew v. Kona Hospital*, 754 F.2d 1420 (9th Cir.1985), we said that for purposes of Rule 56(e), "[a] verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence...." *Id.* at 1423. *Celotex* held that the non-moving party must "go beyond the pleadings and *by her own*

affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'" demonstrate genuine issues of fact. *Celotex*, 106 S.Ct. at 2553 (emphasis added). McElyea's verified complaint meets *Celotex*'s affidavit requirement.

2. In light of the undeveloped record we do not consider here the precise restrictions a prison may constitutionally impose on the right to be provided with a diet consistent with religious dietary laws.

fore find that the Voth affidavit does not overcome McElyea's claim that he was unreasonably denied kosher food and conclude that the grant of summary judgment was inappropriate on this issue.

McElyea further alleges that the prison's religious library does not contain Jewish reading material, although it does provide the literature of other religions. He also states that Jewish prisoners are permitted less time in the religious library than other prisoners. The defendants respond, through the Voth affidavit, by stating that inmates may request religious books from interlibrary loan services and that a letter had been prepared requesting donations of Jewish religious books. McElyea's claims are too confused for us to determine whether summary judgment was proper. Certainly, the defendants cannot erect a barrier to an inmate's access to religious reading material absent a security or penological interest. McElyea's claim also poses an equal protection consideration, which the district court must address in evaluating his claim. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) (per curiam) (Buddhist inmate who was denied "opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts" stated a cause of action under the first and fourteenth amendments). Nevertheless, it is possible that the state may raise an establishment clause argument with respect to McElyea's request that the defendants provide Jewish literature. *Compare Gittlemacker v. Prasse,* 428 F.2d 1, 4–5 (3d Cir.1970) (establishment clause may prohibit state from providing Jewish chaplains), *with Northern v. Nelson,* 315 F.Supp. 687,

688 (N.D.Cal.1970) (ordering state to provide Muslim minister), *aff'd on other grounds,* 448 F.2d 1266 (9th Cir.1971). On this record, we think it would be premature for us to consider the constitutional questions and, accordingly, leave to the district court the task of sorting out the issues involved.

■ Finally, McElyea asserts that he was refused permission to attend a special High Holy Day service. Voth responded that McElyea refused to follow the procedure necessary to participate in the special service. According to Voth, this procedure was developed for security reasons because special services are held outside an inmate's unit. McElyea's complaint is inconsistent. He states that he was not told of the procedure that he must follow, but he also stated that he was told he needed a letter from the representative of the Jewish Prison Services stating that he was Jewish. Although McElyea asserts that the authorities should have known he was Jewish from his records, Voth stated that his records had not arrived from the previous prison. McElyea has not refuted the contention in the Voth affidavit that he did not follow the procedure. He has not alleged, for example, that he attempted to obtain verification that he was Jewish.

Nonetheless, we believe that procedural errors by the district court necessitate further consideration of this issue. The district court abused its discretion in failing to rule on McElyea's motions for a continuance and for appointment of counsel before granting the defendants' motion for summary judgment.[3] *See United States v. 2.61 Acres of Land,* 791 F.2d 666, 671 (9th Cir.1985) (denial of request for continuance

---

3. McElyea has made a strong case that his motions should have been granted. In determining whether a district court ruled properly on a motion for a continuance, we look to the factors identified in *United States v. Flynt,* 756 F.2d 1352, 1359 (9th Cir.), *amended on other grounds,* 764 F.2d 675 (1985). A delay in the early stage of the proceedings, particularly when the defendants themselves previously had asked for and been granted a continuance, is unlikely to have caused the defendants inconvenience. Further, McElyea was proceeding *pro se,* and therefore was less familiar with the require-

ments of the court. Finally, his imprisonment was likely to have interfered with his ability to interview witnesses. *See Harris v. Pate,* 440 F.2d 315, 318 (7th Cir.1971).

Counsel will only be appointed in exceptional circumstances, *Franklin,* 745 F.2d at 1236, which are evaluated in light of the "characteristics of the claim and the litigant." *Whisenant v. Yuam,* 739 F.2d 160, 163 (4th Cir.1984). McElyea makes several non-frivolous claims, including a claim concerning the provision of religious books in prison, the latter raising complicated constitutional issues.

reviewed for abuse of discretion); *Franklin v. Murphy,* 745 F.2d 1221, 1236 (9th Cir.1984) (motion for appointment of counsel addressed to the sound discretion of the district court). It also erred in considering the defendants' motion to dismiss as a motion for summary judgment without giving McElyea, a party appearing *pro se,* notice of the conversion. *See Garaux v. Pulley,* 739 F.2d 437 (9th Cir.1984).[4] We conclude, therefore, that McElyea is entitled to the opportunity to present additional evidence in opposition to the defendants' summary judgment motion on this claim.[5]

### CONCLUSION

The district court erred in granting summary judgment to the defendants on McElyea's claims. REVERSED and REMANDED.

---

4. Defendants argue that McElyea had actual knowledge that makes notice unnecessary. We do not decide here whether actual knowledge would obviate the notice requirement. Nothing in the record suggests that McElyea had knowledge of the summary judgment or the requirements he must meet to defeat it. His request for the opportunity to submit affidavits does not speak to whether he knew that if he did not submit them, his claims would be dismissed without trial.

5. McElyea also asserts that the district court erred in awarding summary judgment because he was at a disadvantage in producing evidence to support his position. This claim is best considered with his continuance claim, unless McElyea's point is that he was able to produce evidence only by subpoenaing witnesses to appear at trial.