901 F.2d 730
 Carl Dean SWIFT, Plaintiff-Appellant,
v.
Samuel LEWIS, Director, Arizona Department of Correction, in
his individual and official capacity; Paul J. Schriner,
Dep. Warden, Santa Cruz Unit, in his individual and official
capacity; Alex Machain, Sr. Chaplain, Perryville Complex,
in his individual and official capacity; George Tichy,
Senior Security Officer for the Santa Cruz Unit, in his
individual and official capacity; George Herman, Warden,
ASPC, Douglas, in his individual and official capacity,
Defendants-Appellees.
David Raymond GREN, Plaintiff-Appellant,
v.
Samuel LEWIS, Director of ADOC; Santok Singh Khalsa, Sikh
Representative, ASPC, Tucson Santa Rita Unit; Captain
Garvin, Captain, ASPC, Tucson Santa Rita Unit; Richard
Tanguay, Chaplain, ASPC, Tucson Santa Rita Unit; Deputy
Warden Hallahan, Deputy Warden, ASPC, Tucson Santa Rita
Unit, et al., Defendants-Appellees.
 Nos. 88-15435, 89-15207.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Nov. 14, 1989.*
Decided April 6, 1990.
 
 David Raymond Gren, Douglas, Ariz., plaintiff-appellant pro se.
 Bruce L. Skolnik, Asst. Atty. Gen., Tucson, Ariz., and Mariannina E. Preston, Asst. Atty. Gen., Phoenix, Ariz., for defendants-appellees.
 Carl Dean Swift, Douglas, Ariz., plaintiff-appellant pro se.
 Appeals from the United States District Court for the District of Arizona.
 Before POOLE, NELSON and WIGGINS, Circuit Judges.
 OPINION
 WIGGINS, Circuit Judge:
 
 
 1
 David R. Gren and Carl D. Swift, Arizona state prisoners, appeal the district courts' summary judgments for defendants in their section 1983 actions against officers of the Arizona Department of Corrections (ADOC). We have jurisdiction under 28 U.S.C. Sec. 1291. We reverse and remand.[1]
 
 
 2
 Appellants claim to be Christians who as part of their religion adhere to the "Vow of the Nazarite." This biblical vow proscribes, among other things, one's cutting his hair and beard. ADOC's grooming policy prohibits long hair and beards. Although ADOC exempts from this policy inmates of certain religious groups (such as Sikhs and American Indians), ADOC refused to exempt appellants. They seek declaratory and injunctive relief and damages.
 
 
 3
 Appellants contend that in refusing to exempt them from its grooming policy, ADOC has violated the free exercise clause of the United States Constitution. The district courts granted summary judgment for ADOC based on their findings that, whether or not the free exercise clause protects the Nazarite Vow, there are legitimate penological justifications for the prison grooming policy.
 
 
 4
 Viewing the evidence in the light most favorable to appellants, we review de novo a district court's grant of summary judgment to determine whether there exist material issues of fact for trial and whether the district court correctly applied the law. Levin v. Knight, 780 F.2d 786, 787 (9th Cir.1986).
 
 
 5
 Prison regulations that infringe on an inmate's practice of his religion are valid if they are "reasonably related to legitimate penological interests." McCabe v. Arave, 827 F.2d 634, 637 (9th Cir.1987) (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)). ADOC asserts the following justifications for its grooming policy: (1) quick inmate identification; (2) preventing sanitary problems; (3) reducing contact between prisoners and guards during body searches; and (4) reducing homosexual attractiveness of inmates. Cases from other courts have recognized the reasonableness of long hair regulations to promote all of these interests.
 
 
 6
 ADOC has, however, failed to provide any evidence that the interests they have asserted are the actual bases for their grooming policy. Nor has ADOC provided evidence that any of these interests justifies treating appellants differently from members of other religious groups. See Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) (per curiam) (prisoner must be afforded a reasonable opportunity of pursuing his faith comparable to that afforded fellow prisoners).
 
 
 7
 Prison officials are not required to prove that their policy is the least restrictive method of furthering relevant penological interests, although "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable." Turner, 482 U.S. at 90-91, 107 S.Ct. at 2262-63. But prison officials must at least produce some evidence that their policies are based on legitimate penological justifications. See Wilson v. Schillinger, 761 F.2d 921, 926-28 (3rd Cir.1985), cert. denied, 475 U.S. 1096, 106 S.Ct. 1494, 89 L.Ed.2d 895 (1986). If it were otherwise, judicial review of prison policies would not be meaningful. Caldwell v. Miller, 790 F.2d 589, 597-98 (7th Cir.1986). In every case cited by ADOC in which legitimate penological interests justified a prison policy, the prison had produced some evidence concerning those justifications. See, e.g., Turner, 482 U.S. at 91, 107 S.Ct. at 2262-63 (upholding restriction on inmate-to-inmate correspondence on the basis of security concerns); Pollock v. Marshall, 845 F.2d 656, 658 (6th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 239, 102 L.Ed.2d 228 (1988) (upholding hair length restriction in part on the basis of identification concerns).
 
 
 8
 We, therefore, cannot uphold on the present state of the records the district courts' summary judgments on the ground that ADOC's policy is reasonably related to valid penological interests.
 
 
 9
 ADOC argues that we can uphold the summary judgments on the alternative ground that the free exercise clause does not protect the Vow of the Nazarite. Determining whether a belief or practice is religious rather than secular is "a most delicate question." Wisconsin v. Yoder, 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1974). We decline to answer that question here. The district courts did not rule on the issue and we, therefore, have no factual record upon which to base such a delicate determination.
 
 
 10
 Gren also alleges that a private party, Santok Singh Khalsa, in violation of the free exercise clause conspired with prison officials to remove Gren from the Sikh list while Gren was still a Sikh. The district court originally directed Khalsa not to answer Gren's complaint until the court had ruled on the ADOC defendants' motion for summary judgment. But, in the course of its Order granting ADOC's motion for summary judgment, the district court stated that Gren had failed to state a claim against Khalsa because Gren had, since the time of Khalsa's alleged wrongful conduct, voluntarily ceased being a Sikh. Gren claims that the district court erred in this holding.
 
 
 11
 Viewing all allegations of material facts in the light most favorable to the plaintiff, we review de novo a district court's dismissal for failure to state a claim to determine whether it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).
 
 
 12
 The district court correctly concluded that Gren failed to state a claim for injunctive and declaratory relief on the ground that he voluntarily ceased to be a Sikh. But Gren's claim for damages from Khalsa for denying him Sikh status from August 1986 until the time Gren voluntarily ceased being a Sikh is unaffected by Gren's later actions. The district court, therefore, erred in holding that Gren had failed to state a claim for damages against Khalsa.[2]
 
 
 13
 We remand the cases to the district courts for them to determine the reasons why ADOC adopted its grooming policy. If the courts find that the reasons are reasonably related to legitimate penological interests, they should further determine whether such a grooming policy may be applied selectively to appellants, but not to members of other religious groups. The courts should determine whether appellants' practice of not cutting their hair is religious rather than secular only if such a determination is necessary to the resolution of appellants' claims.
 
 
 14
 Once a sufficient factual record is developed, the district courts should also reconsider whether the defendants are immune from damage liability because their actions were objectively reasonable in light of the legal rules that were clearly established at the time of their actions. Anderson v. Creighton, 483 U.S. 635, 638-639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).
 
 
 15
 The judgments of the district courts are REVERSED and the cases are REMANDED.
 
 
 
 *
 The panel finds these cases appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 Each of these two cases involves ADOC's grooming policy. Appellants' claims are substantially identical. Under these circumstances, we consolidate the cases for disposition
 
 
 [2]
 While the state action doctrine might seem to bar this claim, Gren has alleged that ADOC contracted with Khalsa to help them determine whether ADOC should classify particular prisoners as Sikhs. If this allegation is true (and we must assume that it is), the state action doctrine does not bar the claim because Khalsa was a "willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S.Ct. 183, 186-87, 66 L.Ed.2d 185 (1980)