Kenneth Andrew **FRIEDMAN,**
Plaintiff–Appellant,

v.

**STATE OF ARIZONA; Samuel Lewis, Director of Arizona Department of Corrections, Defendants–Appellees. (Two Cases)**

Arnold **NAFTEL, Plaintiff–Appellant,**

v.

**STATE OF ARIZONA; Samuel Lewis, Director, Arizona Department of Corrections, Defendants–Appellees.**

**Nos. 89–15671, 89–15696 and 89–16270.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 16, 1990,
No. 89–15696.

Submitted on Briefs May 16, 1990,
Nos. 89–15671, 89–16270 *.

Decided Aug. 22, 1990.

As Amended Sept. 27, 1990.

---

* The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir. 34–4.

Kenneth Andrew Friedman, Tucson, Ariz., in pro per.

Catherine O'Grady, Meyer, Hendricks, Victor, Osborn & Maledon, Phoenix, Ariz., for plaintiff-appellant, Arnold Naftel.

Michael J. Cianci and June Ava Florescue, Asst. Attys. Gen., Phoenix, Ariz., for defendants-appellees.

Before TANG, NORRIS and FERNANDEZ, Circuit Judges.

TANG, Circuit Judge:

## OVERVIEW

Kenneth Andrew Friedman ("Friedman") and Arnold Naftel ("Naftel") appeal the district court's decision to uphold the Arizona Department of Corrections' ("ADOC") Internal Management Policy No. 304.7 ("IMP 304.7") which prohibits facial hair. Friedman and Naftel assert that this regulation impermissibly infringes upon their First Amendment right to exercise their religion freely. Friedman also appeals the district court's denial of his motion for attorney fees for services he rendered as a paralegal. We affirm both of the district court's decisions.

## FACTS AND PROCEEDINGS BELOW

On December 6, 1988, ADOC enacted a new grooming policy. The grooming policy permits mustaches, sideburns, and shoulder length hair. However, the policy prohibits full or partial beards, unless the prisoner for medical reasons cannot shave. Medical exemption beards cannot exceed one-fourth inch. The policy provides no religious exemption to this prohibition.

Friedman and Naftel each filed *pro se* 42 U.S.C. § 1983 complaints which sought permanent injunctive relief to prevent the new grooming policy from being enforced against them. Both complaints alleged that Friedman and Naftel, as Orthodox Jews, could not shave their beards without transgressing their religious beliefs.

On December 7, 1988, the district court granted both Friedman and Naftel temporary restraining orders preventing enforcement of the regulation. At the December 13, 1988 hearing on the preliminary injunction, the district court lifted Naftel's temporary restraining order, but left Friedman's order in place. The district court differentiated between the two because Naftel posed the more serious escape risk.

On February 23, 1989, the district court held a one-day trial on the validity of the regulation. At the trial, appointed counsel represented both prisoners. Both Friedman and Naftel testified as to the sincerity of their Jewish faith and the impact of IMP 304.7 on their religious practices.

They also testified about the ways in which the ADOC allows them to exercise their faith. Friedman testified that in his prison facility in Florence, Arizona, he can obtain one kosher TV dinner a day. Friedman also testified that although a rabbi visits the Florence unit, he does not see him often. Naftel testified that in his prison facility in Tucson, he, like Friedman, could get a kosher TV dinner. Naftel stated that he had not seen a rabbi in the four months he had been in the Tucson unit.

A rabbi testified that having a beard is a legitimate Jewish belief. The rabbi also outlined the source of this tradition. In addition, he testified that some segments of the Jewish community forgo the wearing of a beard. However, he also testified that some segments of the Jewish community view a beard as a matter of fundamental importance.

The government had only one witness, J.C. Kenney. Kenney testified that he had worked in the corrections field since 1960. Kenney stated that he had testified as an expert on corrections on 20 occasions. At the time of the hearing, Kenney oversaw Arizona's nine adult correctional facilities.

Kenney testified that the ADOC's primary goal in instituting a new grooming policy was to be able "to rapidly and accurately identify inmates." Kenney testified that a no beard policy aided rapid and accurate identification because looking at facial characteristics on a clean shaven face constitutes a quick and accurate way to identify prisoners. Kenney claimed that beards frustrate use of facial characteristics to identify prisoners because they can either hide or change facial characteristics. Moreover, Kenney suggested that beards make rapid changes in facial characteristics possible because a prisoner can quickly alter his facial characteristics by growing a beard, grooming a beard in a particular way, or shaving off a beard.

Kenney testified that rapid and accurate identification serves three prison objectives. First, rapid and accurate identification aids in orderly conduct of day-to-day activities which require identification. These activities include picking up legal mail, going to the inmate store, and, sometimes, eating meals. Second, rapid and accurate identification helps control prison disturbances because it assists guards in determining who are the prisoners that caused a disturbance. Third, rapid and accurate identification aids in apprehending a prisoner who has escaped.

Kenney rejected the possibility of accommodating Friedman and Naftel by granting them religious exemptions. Kenney asserted that many prisoners would suddenly claim they were Jews in order to grow a beard. In addition, Kenney asserted that other groups—Sikhs and Moslems—would also seek exemptions. To support these assertions, Kenney related his prior experience in the Oregon prison system. Kenney indicated that so many prisoners sought certification as Jews in order to obtain privileges that the requests for certifications overwhelmed the prison rabbi.

Kenney also rejected the alternative of having two photographs of prisoners—one with a beard; one clean shaven. Kenney suggested that the problem with photographing prisoners with beards is that any facial hair growth can be altered. After a beard is grown, it can be cut in a variety of different lengths and styles. Thus, Kenney indicated a photograph of a bearded prisoner may not be an accurate portrayal of his appearance.

On March 27, 1989, the district court held that the ADOC's grooming policy is constitutional because "the Policy comports with the United States Supreme Court's standard [in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)] as a ra-

tionally related limitation on the enjoyment of plaintiffs' first amendment religious freedoms." Accordingly, the district court dismissed both Friedman's and Naftel's complaint.

Naftel and Friedman each filed a timely appeal. In addition, Friedman filed *pro se* for an injunction preventing enforcement of the grooming policy pending appeal. At an April 17, 1989 hearing, the district court granted Friedman's request.

On June 26, 1989, Friedman filed a motion for attorneys' fees pursuant to 42 U.S.C. § 1988. The district court denied this motion because it found that Friedman was neither a prevailing party nor an attorney. Friedman timely appealed this decision.

## DISCUSSION

### 1. *Constitutionality of Regulation*

Friedman and Naftel argue that IMP 304.7 unconstitutionally restricts their First Amendment right to exercise freely their Orthodox Jewish faith.

### a. Standard of Review

■ Whether IMP 304.7 impermissibly restricts Friedman's and Naftel's first amendment right is a mixed question of law and fact. Determination of the appropriate standard for reviewing such an issue is controlled by *United States v. McConney,* 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). *McConney* sets forth the rule that "to classify mixed questions of law and fact for standard of review purposes, we adopt a functional analysis that focuses on the nature of the inquiry required when we apply the relevant rule of law to the facts as established." *Id.* at 1204. Engaging in such an analysis here, we hold that the constitutional question raised by Friedman and Naftel requires *de novo* review because "the application of law to fact will require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles." *Id.* at 1202.

### b. Merits

In *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* 482 U.S. at 89, 107 S.Ct. at 2261.

The *Turner* court suggested a four factor test to determine whether a regulation reasonably relates to legitimate penological interests:

(1) whether the regulation has a logical connection to the legitimate government interests invoked to justify it;

(2) whether alternative means of exercising the right on which the regulation impinges remain open to prison inmates;

(3) the impact that accommodation of the asserted right will have on guards, other inmates, and prison resources; and

(4) the absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.

*Harper v. Wallingford,* 877 F.2d 728, 732 (9th Cir.1989) (emphasis in original); *see also Turner* at 482 U.S. 89–90, 107 S.Ct. at 2261–62; *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 350–52, 107 S.Ct. 2400, 2405–06, 96 L.Ed.2d 282 (1987).[1]

■ We conclude that IMP 304.7, as applied to Friedman and Naftel, meets the reasonable relation test of *Turner.* All of the four factors weigh in favor of the regulation.

(1) Logical connection to a legitimate government interest

Kenney provided evidence that a no beard policy is logically connected to valid penological interests. According to Kenney, the policy assists in rapid and accurate identification. Kenney testified that rapid and accurate identification fosters three valid penological interests: (1) orderly conduct of day-to-day activities; (2) identifica-

---

**1.** We have not considered whether prisoner rights have been further limited as a result of the Supreme Court's decision in *Employment Division, Department of Human Resources v.* *Smith,* —— U.S. ——, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) because the appellants cannot overcome the *Turner* test.

tion of prisoners responsible for disturbances; (3) apprehension of escapees. Thus, by aiding rapid and accurate identification, the policy serves legitimate penological interests.

### (2) Alternative to exercise right

We emphasize that the alternative means test is not the weighing of what religious practices take the place of growing a beard. Rather, our task under the alternative means analysis is to assess only the degree to which a regulation impinges upon a prisoner's asserted right. This interpretation of the alternative means test is compelled by the Supreme Court decision in *O'Lone*. The *O'Lone* Court stated: "In *Turner*, we did not look to see whether prisoners had other means of communicating with fellow inmates, but instead examined whether the inmates were deprived of 'all means of expression.'" 482 U.S. at 352, 107 S.Ct. at 2406. Thus, the *O'Lone* Court continued: "[W]e think it appropriate to see whether under these regulations respondents retain the ability to participate in other Muslim religious ceremonies." *Id.*

Here, we realize there is no alternative religious practice to substitute for the growing of a beard. Following the *O'Lone* analysis, however, we conclude that Friedman and Naftel have not been denied "all means of expression" of their religion. We note that both Friedman and Naftel testified that they could participate in other aspects of their religion. For example, ADOC provides both with at least one Kosher dinner a day. In addition, Friedman has occasional access both to Sabboth services and to a rabbi.

### (3) Impact of accommodation

Kenney's testimony indicates that accommodating Friedman and Naftel by granting them an exemption would strain prison resources. Kenney indicated that if a religion exemption were granted, prisoners would flood prison officials with claims of being Jews. In addition, other prisoners would seek to grow beards claiming religion purposes. Lastly, the guards would have more difficulty in identifying prisoners.

### (4) Ready alternatives

Friedman's and Naftel's proposed alternative of photographing prisoners twice— once without a beard, once with a beard— imposes more than a *de minimis* cost to valid penological interests. As Kenney points out, the problem with any facial hair growth is that it can always be altered. Thus, allowing someone to have a beard is not a guarantee that the person will maintain the beard in exactly the same style, length or color as he had in the photograph. For example, assume Friedman is photographed clean shaven upon entry into prison. Later, when he asserts his right to grow a beard, he is photographed with a six inch black beard which he claims is the facial growth he wishes to maintain. The day after this second photograph, he could cut the beard to three inches, shape it into a goatee and dye it brown. Thus, neither the photograph taken with the six inch black beard nor the clean shaven photograph would be an accurate reflection of Friedman's appearance after he altered his facial growth. Consequently, a rephotographing program would negatively impact the valid penological interests outlined above.

Our decision in this case is in harmony with our decision in *Swift v. Lewis*, 901 F.2d 730 (9th Cir.1990). In *Swift*, the appellants claimed that IMP 304.7 impinged upon their adherence to the "Vow of the Nazarite." *Id.* at 731. The district court affirmed the ADOC on summary judgment. *Id.* We reversed and remanded on the ground that the ADOC did not provide *any* evidence to support its policy. *Id.*

Here, unlike *Swift*, the ADOC has provided evidence through its expert witness, Kenney, to support its no beard policy. Although Kenney's testimony largely justifies the regulation on the basis of anticipated security problems, we find Kenney's testimony sufficient. *Swift* might be read as requiring concrete evidence to support the regulation—e.g. in the past, the ADOC had a problem in recapturing a prisoner because he shaved his beard. However, such a reading of *Swift* would create a conflict with *Turner*. *Turner* requires that courts allow prison officials "to antic-

*ipate* security problems and to adopt innovative solutions to the intractable problems of prison administration." 482 U.S. at 89, 107 S.Ct. 2262 (emphasis added). Thus, because this case rests on expert testimony produced at a bench trial, our affirmance of IMP 304.7 does not conflict with *Swift.*

Our decision is supported by the Second Circuit's decision in *Fromer v. Scully,* 874 F.2d 69 (2nd Cir.1989). In *Fromer,* the Department of Correctional Services of New York ("DOCS") limited the length of beards to one-inch. *Id.* at 71. Fromer, an Orthodox Jew, challenged the DOCS' regulation on the ground it interfered with his faith's prohibition against shaving one's beard. *Id.* The district court held the regulation unconstitutional using a pre-*Turner* Second Circuit test of prison regulation. *Id.* The Second Circuit affirmed on the basis of its pre-*Turner* standard. *Id.* at 72.

However, subsequent to the Second Circuit's affirmance, the Supreme Court announced the *Turner* test. *Id.* In light of *Turner* and its companion case, *O'Lone,* the Supreme Court granted DOCS's petition for certiorari and vacated the Second Circuit's judgment. *Id.*

On remand, the Second Circuit upheld the DOCS regulation based on the *Turner* test. *Id.* at 73–76. In reaching this conclusion, the Second Circuit rejected some of the same arguments made in this case. For example, the Second Circuit rejected rephotographing as an alternative. *Id.* at 76. The Second Circuit reasoned that rephotographing does not prevent a prisoner from altering his beard after photographing. *Id.* Thus, the Second Circuit concluded that rephotographing negatively impacts the DOCS' ability to circulate accurate likenesses of escaped prisoners, a valid penological interest.

## 2. *Ineffective Counsel*

■ Friedman contends that his trial counsel rendered him ineffective assistance.

We reject Friedman's ineffective assistance of counsel claim. In a civil case like Friedman's, there is no right to an ineffective assistance of counsel claim. *Nicholson v. Rushen,* 767 F.2d 1426, 1427 (9th Cir.1985).

## 3. *Attorney Fees*

■ Friedman contends he is entitled to attorney fees for the work performed in his case as paralegal. Friedman asserts that he is the prevailing party because he obtained the injunction pending appeal.

We reject Friedman's claim. Although Friedman prevailed on the injunction pending appeal, he is not the prevailing party on the merits of the First Amendment claim brought under 42 U.S.C. § 1983. This claim constitutes the significant issue in his case. There can be no entitlement to attorney fees. *Diaz v. San Jose Unified School Dist.,* 861 F.2d 591, 597 (9th Cir.1988).[2]

## 4. *Sanctions*

The State of Arizona requests that the panel impose attorneys' fees of $500 for defending against Friedman's attorneys' fees action.

Attorney fees may be awarded as a sanction under Federal Rule of Appellate Procedure 38. However, we decline to do so. Friedman, an incarcerated *pro se* litigant, has taken a position that is not so frivolous as to justify an award of sanctions against him. *See Hughes v. Rowe,* 449 U.S. 5, 15, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (courts should rarely impose attorney fees upon incarcerated *pro se* litigants).

### CONCLUSION

We conclude IMP 304.7 does not impermissibly restrict Friedman's and Naftel's right freely to exercise their religion. We reject Friedman's ineffective assistance of counsel claim as well as his attorney fees claim as meritless. Though attorney fees may be awarded to the State under Federal Rule of Appellate Procedure 38, we decline to do so because Friedman is an incarcerated *pro se* litigant.

AFFIRMED.

---

**2.** Even if Friedman had been the prevailing party, he could not obtain attorney fees because he is *pro se* on the injunction pending appeal. *See*

*Gonzales v. Kangas,* 814 F.2d 1411, 1412 (9th Cir.1987).