1 F.3d 1246
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Avraham Y. BEN-AVRAHAM, Plaintiff-Appellant,
v.
Charles MOSES, Superintendent; Phillip Briggs, Asst.
Superintendent, Defendants-Appellees.
 No. 92-35604.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 6, 1993.*
Decided July 19, 1993.
 
 Before TANG, POOLE and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Avraham Y. Ben-Avraham, an Alaska state prisoner, appeals the district court's summary judgment in favor of defendants in Ben-Avraham's civil rights action under 42 U.S.C. Secs. 1983 and 1985. Ben-Avraham contends that defendants violated his first amendment right to freedom of religion by failing to provide him a kosher diet. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 
 3
 We review de novo the district court's grant of summary judgment. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant law. Alaska Airlines, Inc. v. United Airlines, Inc., 948 F.2d 536, 539 (9th Cir.1991), cert. denied, 112 S.Ct. 1603 (1992).
 
 
 4
 The record shows the following facts are uncontroverted: Ben-Avraham is a member of the Lubovitch movement of the Hasidic sect of Orthodox Judaism. In 1989, Ben-Avraham began to request kosher food in accordance with the dietary laws of his religion. At the time, a kosher diet was unavailable because of the absence of Jewish prisoners and officials at the detention center and prison at which Ben-Avraham was incarcerated did not have a working knowledge of kosher diets. The prison officials attempted to accommodate Ben-Avraham's request first by providing him vegetarian and nonpork diets and, when Ben-Avraham remained unsatisfied, by consulting a rabbi and searching local stores for kosher foods. The prison officials located a source of frozen kosher meals that met Ben-Avraham's requirements and purchased enough for a short time. The meals were expensive, however, and the officials decided to stop serving them to Ben-Avraham.
 
 
 5
 The prison officials also learned of a federal prison, apparently in Alabama, that served the type of kosher meals Ben-Avraham wanted. Ben-Avraham was transferred to that prison and remained there for approximately one year. Ben-Avraham subsequently requested a transfer back to Alaska state prison and again encountered problems in obtaining a kosher diet.
 
 
 6
 During the times Ben-Avraham has been incarcerated in state prison, he has refused to eat certain foods provided to him as not meeting his dietary requirements and has gone on hunger strikes. He has lost considerable weight and, at one point, was placed in medical segregation. He has since been returned to the general prison population but has not been reinstated to the prison job he lost while in medical segregation.
 
 
 7
 On appeal, Ben-Avraham contends the district court erred by granting summary judgment on his claim that defendants violated his right to a kosher diet.[1] This contention lacks merit.
 
 
 8
 "Inmates ... have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir.1987) (per curiam). Nevertheless, a prisoner's "free exercise right ... is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." Id. at 197. Proper balancing of these interests requires the application of a "reasonableness" test: "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. (quotations omitted; alteration in original).[2]
 
 
 9
 The question thus becomes whether defendants' decision not to provide Ben-Avraham with the strict kosher diet he requested was reasonably related to legitimate penological interests. See id. To determine this question we apply the four-factor test set forth by the Supreme Court in Turner v. Safley, 482 U.S. 78, 89-90 (1987). See, e.g., Friedman v. Arizona, 912 F.2d 328, 332 (9th Cir.1990) (applying Turner test in determining whether Arizona prison regulation prohibiting facial hair violated prisoners' free exercise rights), cert. denied, 498 U.S. 1100 (1991).
 
 
 10
 Before we consider the four Turner factors, we address Ben-Avraham's contention that the district court erred by finding that certain facts were uncontroverted. This contention lacks merit. Ben-Avraham's allegations of error are in large part unrelated to the Turner factors and, therefore, are immaterial. In addition, Ben-Avraham's allegations of error are unsupported by the record. On appeal, Ben-Avraham relies heavily on his opposition to defendants' motion to dismiss and for summary judgment and the exhibits attached thereto. The record shows, however, that the district court denied Ben-Avraham leave to file that opposition. Thus, the opposition was not before the district court and is not a part of the record before this court.
 
 
 11
 In regard to the first Turner factor, it is undisputed that the cost of providing Ben-Avraham meals that met his demands was almost three times as great as the cost of providing regular prison meals. It also is undisputed that Ben-Avraham insisted that his food be prepared and served in ways that were difficult for prison staff to accommodate and that such special handling took staff away from their duty to oversee the rest of the prison population.[3] These are legitimate penological concerns. See Friend v. Kolodzieczak, 923 F.2d 126, 128 (9th Cir.1991) (evidence indicated that accommodation of prisoners' request for rosaries and scapulars would create potential threat to prison security); cf. 28 C.F.R. Secs. 547.20(d), 548.13(a) (federal inmates to be provided with food consistent with religious dietary requirements to extent security and budgetary considerations permit). The record thus shows the defendants' decision not to comply with Ben-Avraham's demands was logically connected to valid penological interests. See Friedman, 912 F.2d at 331.
 
 
 12
 Second, it is undisputed that Ben-Avraham had a prayer shawl, had access to a rabbi, was provided special food at Passover, and was allowed to wear a yarmulke in his living module. Therefore, Ben-Avraham had alternative means to practice his religion. See id.
 
 
 13
 Third, as we stated above, it is undisputed that the cost of providing Ben-Avraham meals that complied with his demands was significantly greater than the cost of meals for other prisoners. It is also uncontroverted that accommodating Ben-Avraham's demands could lead to a proliferation of special diet requests, and to resentment by other prisoners and disruption of the administration of prison food service or prison discipline. Accommodation of Ben-Avraham's diet demands would therefore have an impact on guards, other inmates, and prison resources. See id.
 
 
 14
 Finally, it is uncontroverted that frozen dinners meeting Ben-Avraham's requirements were available and that defendants at one time provided such meals to Ben-Avraham. It is also undisputed, however, that such meals are costly. Ben-Avraham was ineligible for kitchen duty (which would allow him to prepare his own meals) because of his custody level. Moreover, Ben-Avraham previously was transferred to a federal prison to accommodate his request for kosher meals but he subsequently requested a transfer back to state prison even though he was told he would not be given kosher meals. The record thus shows that there are no ready alternatives that would satisfy Ben-Avraham's demands at de minimis cost to valid penological interests. See id.
 
 
 15
 On this record, we conclude that defendants' decision not to provide Ben-Avraham a strict kosher diet was reasonably related to legitimate penological interests. McElyea, 833 F.2d at 197. We therefore affirm the district court's summary judgment for defendants on Ben-Avraham's religious diet claim.
 
 AFFIRMED.[4]
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In his amended complaint, Ben-Avraham sought damages and injunctive relief requiring defendants to provide him a kosher diet and restore him to his prison job. The district court dismissed Ben-Avraham's claim for damages as barred by the eleventh amendment and granted summary judgment on Ben-Avraham's claim for injunctive relief. To the extent Ben-Avraham contends on appeal that he was improperly removed from his prison job, that contention lacks merit. Ben-Avraham has no constitutional right to work. See Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 845 (9th Cir.1985)
 In addition, Ben-Avraham purports to challenge defendants' decision to place him in "medical segregation." His arguments, however, are based solely on his opposition to defendants' motion to dismiss. As we discuss below, that opposition is not part of the district court record and may not be considered on appeal. In any event, the question of whether Ben-Avraham was properly placed in medical segregation is not material to this case.
 
 
 [2]
 We reject Ben-Avraham's contention that the district court failed to recognize his right to a diet that satisfies his religion's dietary laws. The district court's order, although not referring to McElyea by name, indicates that the court recognized Ben-Avraham's right. We also reject Ben-Avraham's apparent contention that, under McElyea, his right to a kosher diet is absolute
 
 
 [3]
 For instance, Ben-Avraham demanded that his food be stored, cooked, and served separately from all other food and that special kosher pots, dishes, and utensils be used. He insisted that his food be opened in his presence because he didn't trust the kitchen staff not to contaminate his food. Finally, different pans, dishes, and utensils had to be used for different foods
 
 
 [4]
 Ben-Avraham's request for fees and costs is denied