award attributable to the appellate proceedings must be reversed.

AFFIRMED in part and REVERSED in part. Respondent's motion for fees on appeal is denied without prejudice. Each party shall bear its own costs.

**Philip W. HENDERSON, Plaintiff–Appellant,**

v.

**Cal A. TERHUNE, Defendant–Appellee.**

No. 02–17224.

United States Court of Appeals, Ninth Circuit.

Submitted June 15, 2004.[*]

Filed Aug. 12, 2004.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Philip W. Henderson, pro se, Ione, CA, plaintiff-appellant.

Michael G. Lee, Supervising Deputy Attorney General, Office of the Attorney General of the State of California, Sacramento, CA, for the defendant-appellee.

Before: SCHROEDER, Chief Judge, CANBY, JR., and TALLMAN, Circuit Judges.

TALLMAN, Circuit Judge:

Philip Henderson, a Native American inmate in the California state prison system, appeals the district court's judgment in favor of prison officials in his 42 U.S.C. § 1983 action. Henderson alleges that the California Department of Corrections' ("CDC") hair length regulation infringes upon the free exercise of his Native American religious beliefs in violation of the First Amendment. We affirm the district court's judgment because the regulation at issue is reasonably related to legitimate penological interests.

Henderson also appeals the district court's conclusion that he cannot state an actionable claim under the American Indian Religious Freedom Act of 1978 ("AIRFA"), 42 U.S.C. § 1996. We find that the AIRFA is simply a policy statement and does not create a cause of action or any judicially enforceable individual rights. Accordingly, we affirm the district court's conclusion.

I

Henderson is a Native American of mixed ancestry who is currently incarcerated in California. He practices traditional Native American religion, and the prison permits him to use sweat lodges, participate in pipe ceremonies, wear a medicine bag, and consult with spiritual advisors.

The district court found that Henderson sincerely believes that his hair is sacred. Henderson describes hair as "an outward manifestation of [one's] inner commitment to the Spiritual Path, and of [one's] connection to the Creator." His religious beliefs permit him to cut his hair only under certain well-defined circumstances (*e.g.,* to express mourning for the death of a relative), and to have his hair cut otherwise is considered a form of defilement.

On October 16, 1997, the CDC implemented grooming regulations that prohibit male inmates from wearing their hair long. Specifically, the regulations state:

A male inmate's hair shall not be longer than three inches and shall not extend over the eyebrows or below the top of the shirt collar while standing upright. Hair shall be cut around the ears, and side-burns shall be neatly trimmed, and shall not extend below the mid-point of the ear. The width of the sideburns shall not exceed one and one-half inches and shall not include flared ends.

CAL. CODE REGS. tit. 15, § 3062(e) (2004).

If a prisoner fails to comply with this regulation, he faces punitive sanctions. *Id.* § 3062(m). There is no religious exemption. The district court found that Henderson could not comply with this regulation without violating his religious beliefs.

Henderson filed suit under 42 U.S.C. § 1983 against prison officials, contending that the CDC's hair length regulation violated his First Amendment and statutory

rights. The district court considered, through summary adjudication, the evidence and briefing filed by the parties and entered judgment for the CDC. Henderson timely appealed.

## II

■ Whether California's hair length regulation impermissibly restricts Henderson's First Amendment right is a mixed question of law and fact. The constitutional question Henderson has raised requires *de novo* review because "the application of law to fact will require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles." *Friedman v. Arizona,* 912 F.2d 328, 331 (9th Cir.1990) (citation omitted) (discussing the standard of review in a challenge to an Arizona prison regulation relating to facial hair). The legitimacy of prison officials' asserted penological interests are findings of fact that we review for clear error, *Cal. First Amend. Coalition v. Woodford,* 299 F.3d 868, 880 (9th Cir.2002), reversing only when the record leaves us with a "definite and firm conviction that a mistake has been committed." *Id.* at 873 (citation omitted).

## III

■ Prison inmates "retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citation omitted). Regulations that impinge on an inmate's constitutional rights will be upheld only if they are reasonably related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Under *Turner,* we must decide (1) whether the CDC's asserted penological interests are legitimate and (2) whether the hair-length regulation bears a reasonable relationship to those interests.

### A

■ The CDC presented six penological interests to the district court that it asserted were advanced by the hair length regulation:

1. Short hair makes it easier to identify inmates who leave approved areas, create disturbances, or pose an escape risk;

2. Short hair facilitates searches for concealed contraband, and reduces the difficulty and time needed for such searches;

3. Short hair promotes hygienic living conditions;

4. Short hair ensures that prisoners who work in industrial jobs can wear safety devices like goggles;

5. Short hair reduces animosity among prisoners, especially those in prison gangs who show loyalty through their hairstyles; and

6. Short hair encourages a positive self-image, which may facilitate employment opportunities for inmates upon their release.

Similar interests have been asserted in nearly every like case across the country. *See* Mara R. Schneider, Note, *Splitting Hairs: Why Courts Uphold Prison Grooming Policies and Why They Should Not,* 9 Mich. J. Race & L. 503, 507–12 (2004).

With respect to its first interest, the CDC stated that it releases prison photographs to the community to aid in recapture when a prisoner escapes, and that it was concerned that an escapee could cut his hair to alter his appearance from his identification photo, thereby making recapture more difficult. The district court did not clearly err by concluding that this

interest was legitimate. *See Friedman,* 912 F.2d at 331–32 (holding that prison interests in inmate identification were legitimate).

As to the second, third, and fourth interests, the district court found that the CDC had valid concerns about prisoners concealing contraband in long hair and having problems with hygiene and workplace safety. The CDC presented evidence that contraband had been hidden in long hair in the past and that searching through a prisoner's long hair requires substantially more effort than searching short hair. The district court found that the CDC's evidence showed a significant problem with lice in the prison population and that physical examination of inmates for lice took longer for inmates with long hair. The CDC's evidence also showed that there was a genuine safety concern involving the danger of operating prison machinery by inmates with long hair. We cannot conclude that these findings were clearly erroneous.

With respect to the CDC's fifth asserted interest, the court noted that long hair could be used as a symbol of gang affiliation, but that the probative value of this interest was weak because Skinhead inmates could still display gang loyalty by shaving their heads, which did not violate the regulation. We agree that this purported interest is weak.

As for the CDC's final asserted interest, the district court did not specifically state whether it found that promoting a prisoner's positive self-image was a valid penological interest, but such a conclusion can fairly be inferred from the court's order.

The district court fully considered the evidence presented by both parties, made the requisite findings of fact supported by the evidence adduced, and determined that the CDC's proffered penological interests

were legitimate. The district court's findings are not clearly erroneous.

### IV

■ We next apply a four-prong test to assess whether a reasonable relationship exists between the CDC's hair length regulation and its legitimate penological interests:

First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. Second, whether there are "alternative means of exercising the right that remain open to prison inmates" must be assessed. Third, "the impact accommodation of the asserted constitutional right will have on the guards and other inmates, and on the allocation of prison resources generally" must be determined. Fourth, "the absence of ready alternatives" to the regulation must be explored. The "existence of obvious, easy alternatives may be evidence that the regulation is not reasonable."

*Ward,* 1 F.3d at 876 (quoting *Turner,* 482 U.S. at 90, 107 S.Ct. 2254) (internal citations omitted).

### A

■ With respect to the first prong, there is a clear connection between the hair length regulation and the CDC's desire to prevent inmates from quickly changing their appearance, hiding weapons and contraband in their hair, displaying gang-related hairstyles, and maintaining a safe and hygienic prison environment.

Though short hair is unlikely to further the CDC's goal of promoting a positive self-image in prisoners like Henderson, who consider themselves defiled if their hair is cut, the other five interests proffered by the CDC indeed have a "valid, rational connection" with the regulation.

We thus find that the first prong of the *Turner* test weighs in favor of the CDC.

### B

The second *Turner* factor requires us to examine whether, notwithstanding the hair length regulation's infringement on one aspect of Henderson's religious exercise, he still has alternative means of exercising his religion. 482 U.S. at 89, 107 S.Ct. 2254. "The relevant inquiry under this factor is not whether the inmate has an alternative means of engaging in a particular religious practice that he or she claims is being affected; rather, we are to determine whether the inmates have been denied all means of religious expression." *Ward,* 1 F.3d at 877 (citing *O'Lone,* 482 U.S. at 351–52, 107 S.Ct. 2400).

If long hair were just one of many possible forms of religious expression, the denial of that single avenue of expression would not be as problematic. However, in this case, Henderson asserts that by cutting his hair, he would be considered "defiled" and therefore unworthy or unable to participate in the other major practices of his religion, like pipe ceremonies and sweat lodge, and he would have to destroy his religious items. He would thus be denied all means of religious expression.

When evaluating the second *Turner* factor, we have found relevant "the distinction between a religious practice which is a positive expression of belief and a religious commandment which the believer may not violate at peril of his soul." *Ward,* 1 F.3d at 878; *see also Ashelman v. Wawrzaszek,* 111 F.3d 674, 677 (9th Cir.1997) (noting that "requiring a believer to defile himself by doing something that is completely forbidden by his religion is different from (and more serious than) curtailing various ways of expressing beliefs for which alternatives are available"). In *Ward,* we considered an Orthodox Jewish inmate's challenge to a prison's failure to provide him with a Kosher diet. *Ward,* 1 F.3d at 877. Like asking an Orthodox Jew to eat non-Kosher food, cutting Henderson's hair involves a strict religious prohibition about the sanctity and purity of the body, and the concern we identified in *Ward* is heightened. Due to the particular nature of the religious belief at issue, this factor weighs in Henderson's favor.

### C

The third prong of the *Turner* test requires us to assess the burden that accommodating Henderson's wish to retain his long hair would place on the prison's guards, other inmates, and prison resources. 482 U.S. at 90, 107 S.Ct. 2254. The district court found that prison resources would be stretched if prison guards had to spend more time conducting searches of long hair or inspecting it for hygienic purposes. The district court further found that making an exception to the hair-length regulation for some religious groups had the potential to create prisoner unrest because of the appearance that certain groups of inmates were receiving preferential treatment. Yet as the *Ward* court noted, this potential effect "is present in every case that requires special accommodations for adherents to particular religious practices[,]" and therefore is not dispositive. 1 F.3d at 878.

However, because a religious exception for Henderson's hair would place burdens on the prison with respect to safety-and health-related searches, this factor weighs in favor of the CDC.

### D

The fourth and final *Turner* factor requires us to evaluate whether there are alternatives to the prison's current policy that would accommodate Henderson at *de*

*minimis* cost to the prison. 482 U.S. at 90, 107 S.Ct. 2254. The district court concluded that this factor weighed in favor of the CDC because the only alternative would be granting Henderson an exemption for his long hair, which would undermine the penological interests that the CDC asserts. However, the district court also found that there was a viable alternative to the hair regulation that would protect the CDC's interest in safety during industrial work (permitting only short-haired prisoners to work on jobs where hair might be caught in machinery), and that the CDC's goal of promoting Henderson's positive self-image would still be met by allowing him to wear his hair long.

While there are alternatives to the hair-length regulation that would protect some of the CDC's asserted penological interests, an exception to the prison policy would create a number of burdens on the CDC and hamper a majority of its interests. We therefore find that this factor also weighs in favor of the CDC.

### E

Although the second *Turner* factor weighs in Henderson's favor, the other three do not. The *Turner* test is a balancing test and not every prong must be met in order to find that a regulation is reasonably related to legitimate penological interests. *See Ward*, 1 F.3d at 879 (remanding for further fact-finding so district court could engage in "a careful balancing" where three of four *Turner* factors seemed to weigh in favor of the government). We

therefore affirm the district court's judgment and its conclusion that the CDC's hair length regulation is reasonably related to legitimate penological interests.[1]

### V

Henderson also appeals the district court's conclusion that he could not state an actionable claim under the American Indian Religious Freedom Act of 1978 ("AIRFA"). The AIRFA is a joint resolution of Congress that establishes the "policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise [their] traditional religions . . ., including but not limited to access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites." 42 U.S.C. § 1996.

The Supreme Court has held that the AIRFA is simply a policy statement that is judicially unenforceable. *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 455, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988). Because the AIRFA does not provide a means of legal recourse for any tribe or individual, the district court did not err by concluding that Henderson could not raise a claim under the Act.

### VI

The district court properly granted judgment in favor of prison officials with respect to Henderson's § 1983 claim. The CDC's hair length regulation is valid be-

---

1. We express no opinion about whether the CDC's hair length regulation violates the Religious Land Use & Institutionalized Persons Act ("RLUIPA"), which provides that the government may not impose a substantial burden on an inmate's exercise of religion unless the regulation in question furthers a compelling state interest in the least restrictive manner.

42 U.S.C. § 2000cc–1(a); *Mayweathers v. Newland*, 314 F.3d 1062, 1070 (9th Cir.2002) (upholding the RLUIPA's constitutionality). Henderson brought his claim under the First Amendment, not the RLUIPA, so here we apply only *Turner's* "reasonable relation" standard.

cause it is reasonably related to legitimate penological interests. The court likewise correctly held that Henderson did not state a valid claim under the AIRFA.

**AFFIRMED.**