Kevin Carlton McCLAFLIN, Plaintiff,

v.

Fred B. PEARCE, Director of Department of Corrections, et al., Defendants.

Civ. No. 89–1361–FR.

United States District Court, D. Oregon.

Sept. 10, 1990.

See also, 739 F.Supp. 537.

Kevin Carlton McClaflin, pro se.

Dave Frohnmayer, Atty. Gen., Jan Peter Londahl, Asst. Atty. Gen., Salem, Or., for defendants.

## OPINION

FRYE, District Judge:

The matter before the court is the motion for summary judgment of the defendants (# 35).

## UNDISPUTED FACTS

This is an action under 42 U.S.C. § 1983, brought by an inmate of the Eastern Oregon Correctional Institution (EOCI). Plaintiff, Kevin Carlton McClaflin, a Roman Catholic, alleges that the defendants have violated his rights under the first amendment, eighth amendment and fourteenth amendment by restricting his ability to practice his religion. McClaflin has been a resident of the disciplinary segregation unit at EOCI since April 14, 1988.

Defendant Fred B. Pearce is the Director of the Oregon Department of Corrections (DOC). Defendant Richard S. Peterson is the Assistant Director of the DOC. Defendant Dave Schumacher is the Rules Coordinator of the DOC. Defendant Robert L. Wright is the Superintendent of EOCI. Defendant George H. Baldwin is the Assistant Superintendent of EOCI. Defendant James L. Trumbly is the Security Manager of EOCI. Defendant David L. Hickerson is the Program Services Manager of EOCI.

Inmates in the general population at EOCI are allowed to attend religious services held in the prison and, upon request, to receive weekly visits of up to one-half hour from a clergyman of the denomination of their choice. Clergymen from outside the prison may make such visits, as well as the religious staff of the prison. Prior to September, 1989, inmates in the disciplinary segregation unit were also allowed to receive visits from religious volunteers from outside the prison. In June, 1988, McClaflin requested that he receive weekly visits from a Catholic priest. At that time, there was no Catholic priest on the prison staff. Between June, 1988 and August, 1989, McClaflin received nine visits from a religious volunteer from outside the prison, Father Fitzpatrick. These visits averaged approximately thirty minutes in duration.

In late August, 1989, Superintendent Wright determined that the practice of allowing inmates in the disciplinary segregation unit to visit with religious volunteers from outside the prison should be discontinued for security reasons and in order to bring EOCI in compliance with the adminis-

trative rules of the DOC. McClaflin's visits with Father Fitzpatrick were then discontinued, as were all visits by religious volunteers from outside the prison to inmates in the disciplinary segregation unit.

On September 30, 1989, McClaflin filed an interview request seeking to be granted visits from a Catholic priest for the purpose of receiving communion and religious counseling. David Cassel, the chaplain of EOCI, responded with the information that the visitation policy had been changed for security reasons, but that a Catholic priest would soon be joining the prison staff.

Father Charles Graves, a Catholic priest, was hired in November, 1989 and began training and orientation in December, 1990. During the period from September, 1989 through January, 1990, Chaplain Cassel, a Protestant clergyman, was available to provide counseling and to distribute reading materials to the inmates of the disciplinary segregation unit. Chaplain Cassel met with McClaflin at least once during this period. Father Graves began visiting inmates on February 13, 1990. Since that time, Father Graves has visited McClaflin each week for approximately ten minutes. During these weekly visits, Father Graves provides McClaflin with communion and a brief period of religious guidance or counseling. No rule or procedure of the Department of Corrections governs the length of time of such visits with inmates in the disciplinary segregation unit; rather, the length of time of the visits of Father Graves is determined by practical considerations, such as the time he has to complete all of his duties to all of the inmates of EOCI.

## APPLICABLE LAW

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976). However, the mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient; there must be evidence from which a jury could reasonably find for the plaintiff. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## ANALYSIS AND RULING

The defendants move for summary judgment against McClaflin's complaint on the grounds that the constitutional rights of McClaflin to practice his religion have not been violated by the policies of the EOCI, either now or in the past. Although McClaflin has raised several issues in his complaint, some issues have been resolved or have become moot so that only three issues are now before the court:

1. whether the failure of EOCI to have provided McClaflin with visits from a Catholic priest for approximately six months violated the constitutional rights of McClaflin;

2. whether EOCI must allow McClaflin to have visits of greater duration with Catholic priests; and

3. whether EOCI must allow McClaflin to keep a rosary and a Catholic religious calendar in his cell.

McClaflin cites various constitutional grounds for his claims, but has not raised any issues under the Establishment Clause or for deprivation of a liberty interest. The Supreme Court recently held that no liberty interest is created by regulations, similar to the regulations of the DOC, which allow inmates to receive visitors under certain circumstances. *Kentucky Dept. of Corrections v. Thompson,* —— U.S. ——, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989). Therefore, McClaflin's claim is

essentially that his right to the free exercise of his religion has been violated.

■ Although the right to exercise one's religious practices and beliefs does not terminate at the prison door, the right of free exercise is necessarily limited by the fact of incarceration and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security. *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir.1987). The court determines whether these competing interests are balanced properly by applying a test of reasonableness:

> To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.... We recently restated the proper standard: "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."

*O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).

■ An inmate does not have the right under the Free Exercise Clause to have the particular clergyman of his choice provided to him. *Reimers v. Oregon*, 863 F.2d 630, 632 (9th Cir.1988). Moreover, although prison officials may not prohibit or discourage the exercise of a particular religious belief, prison officials need not provide exactly the same religious facilities or personnel to prisoners of every faith. *Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 1081 n. 2, 31 L.Ed.2d 263 (1972). *See also Allen v. Toombs*, 827 F.2d 563, 569 (9th Cir.1987) (no violation where Native Americans were limited to visiting religious leaders while prison staff included Christian chaplains).

■ The undisputed evidence before the court is that the policy regarding visitors to inmates in the disciplinary segregation unit was changed in order to bring the policy into conformity with the applicable administrative regulations of the DOC, and that the regulations of the DOC are based on reasonable concerns about security. The change in policy affected all inmates in the disciplinary segregation unit, and there is no evidence that the change in policy was aimed at members of a particular religion. Although McClaflin makes conclusory allegations of bad faith and retaliation on the part of the prison officials, McClaflin suggests no factual basis for such allegations. Rather, the evidence shows that the prison officials responded to the complaints of McClaflin after the change in policy and acted to remedy the situation.

Under the prior policy, McClaflin had no assurance of regular visits from a Catholic priest. The evidence indicates that visits by outside volunteers, such as Father Fitzpatrick, were made at the discretion of the volunteers. McClaflin concedes that he received only irregular visits from Father Fitzpatrick, an average of one visit every two months. Moreover, the undisputed evidence shows that although McClaflin was temporarily deprived of visits from a Catholic priest, he had access to counseling from Chaplain Cassel and met with Chaplain Cassel on at least one occasion.

The court finds that as a matter of law the change in the visitation policy for inmates in the disciplinary segregation unit was reasonably related to legitimate penological interests. Although the court might question the validity of a regulation which permanently deprives members of a certain faith of contact with religious leaders of that faith, under the undisputed facts in this case the temporary absence of a Catholic priest does not rise to the level of a violation of McClaflin's freedom to exercise the religion of his choice.

■ The second issue is whether McClaflin is entitled to receive religious visits of greater duration. McClaflin is now receiving religious visits in accordance with OAR 291–11–060, which provides that upon request religious services staff will visit an inmate in the disciplinary segregation unit once per week. McClaflin does not ask for

more frequent visits, but seeks to extend the duration of the visits to thirty minutes. Prisoners in the general population at EOCI are allowed to have religious visits of thirty minutes per week.

Father Graves presently visits McClaflin for approximately ten minutes per week, during which time McClaflin receives communion and religious counseling. The length of these visits is not governed by any regulation or policy, but is determined by practical considerations such as the amount of time Father Graves has to visit all of the inmates of EOCI.

Although longer visits might be of benefit to McClaflin, there is no evidence before the court that longer weekly visits are essential in order for McClaflin to practice the religion of his choice. Non-essential elements of a religion may be withheld from inmates in a disciplinary segregation unit, even though they are provided to inmates in the general population. *See Allen v. Toombs, supra*, 827 F.2d at 567 (security considerations supported restriction that prevented Native American inmates in the disciplinary segregation unit from participating in Sweat Lodge Ceremony).

Thus, McClaflin has failed to produce evidence which creates a genuine issue of material fact regarding his claim for extended religious visits.

The remaining issue concerns the demand of McClaflin to keep a rosary and a Catholic religious calendar in his cell. The issue is moot with respect to the calendar as the defendants have stated that McClaflin may possess a Catholic calendar if he can locate one which meets the security requirements of the segregation unit.

 With respect to the demand for a rosary, the affidavit of Chaplain Cassel states that the possession of a rosary is considered important, but not necessary, to the practice of the Catholic religion. Chaplain Cassel further states that the items which inmates of the disciplinary segregation unit are allowed to possess in their cells are restricted for security reasons, and that none of the inmates in the disciplinary segregation unit are permitted to possess religious items such as crosses, stars of David, or rosaries. McClaflin has produced no evidence to contradict these statements.

Therefore, the court finds that the restriction on the inmates of the disciplinary segregation unit which prevents them from possessing non-essential religious items is reasonably related to legitimate penological interests. Accordingly, McClaflin has not established a genuine issue of material fact as to any of the questions before the court.

### CONCLUSION

The motion for summary judgment of the defendants (# 35) is granted.